# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 1, 2003

## STATE OF TENNESSEE v. RAYMON HAYMON

**Appeal from the Circuit Court for Dyer County**
**No. C99-175A    Lee Moore, Judge**

---

**No. W2001-02797-CCA-R3-CD  - Filed September 5, 2003**

---

The Appellant, Raymon Haymon, was convicted by a Dyer County jury of the premeditated first degree murder of Jody McPherson and was sentenced to life imprisonment.  In this appeal as of right, Haymon, proceeding *pro se*, presents the following issues for our review:  (1) whether the evidence was insufficient (a) because the accomplice's testimony was not independently corroborated, and (b) due to conflicting and contradictory testimony from the State's witnesses and his proof of alibi; and (2) whether the State committed prosecutorial misconduct by (a) presenting perjured testimony at trial, and (b) during closing argument.  Finding no error, the judgment of the Dyer County Circuit Court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Raymon Haymon, *Pro Se*, Whiteville, Tennessee.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Brent C. Cherry, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

On July 19, 1997, the Appellant offered Wiled McMillin five hundred dollars to help him kill Jody McPherson.  According to McMillin, the Appellant stated he wanted McPherson killed because "he didn't wanna go back to prison."  The Appellant and McPherson had previously been arrested for the aggravated robbery of Pete's Liquor Store.  McMillin refused the offer, and the

Appellant stated he would get Terry Cork to help him. McMillin also testified that, later on that evening, he saw the Appellant, Terry Cork, and Jody McPherson riding in a red car in the Middle City area.

Terry Cork testified that, on the evening of July 19th, he left work at 9:00 p.m. and went to his father's house. Around 10:00 or 10:30 p.m., Cork walked to Erline Warren's house to watch television. During the evening, the Appellant drove to Warren's house and, thereafter, he and Cork left in a red vehicle driven by the Appellant. The Appellant dropped Cork off at his aunt's house and subsequently returned with Jody McPherson in the car. The three men drove toward Middle City under the pretext of "hang[ing] out and talk[ing] to some women." Once en route, the Appellant stated that he needed Cork and McPherson to help him look for a discarded rifle in a field that would "take care of some business concerning the Pete's Liquor Store robbery." Upon arrival at a field in Middle City, the men lit newspaper torches and looked for the rifle. As they were searching, Cork observed the Appellant shoot McPherson several times. Cork claimed that he began to run, but the Appellant pulled a second gun on Cork and told him "that it was gonna be more than one person out there dead if [Cork] didn't listen to what [the Appellant] said." The Appellant then ordered Cork to also shoot McPherson. The Appellant instructed Cork to wipe the guns off and "throw the guns off the side of a little bridge that was out there, like a little creek."

McPherson's body was discovered the next morning with one visible wound to the chest and two other wounds to the head and back. A cell phone was found at the scene, which was linked to Cork. Cork and the Appellant were questioned by the police, and both men denied any involvement in the murder. When the Appellant was interviewed on July 20, 1997, he stated that he knew McPherson had been shot three times, "one from the head, one from the chest, and one from the back." At this point, no details of the murder had been disclosed to the public. After being taken into custody on a bank robbery charge in 1999, Cork confessed to his involvement in McPherson's death and helped the police recover one of the discarded weapons used in the murder.

On June 14, 1999, a Dyer County grand jury indicted the Appellant for the premeditated first degree murder of Jody McPherson. On March 9, 2001, after a trial by jury, the Appellant was convicted as charged and was sentenced to life imprisonment. The Appellant's motion for new trial was denied, and this appeal followed.

**ANALYSIS**

**I. Sufficiency of the Evidence**

The Appellant first contends that the proof is not sufficient to support a verdict of premeditated first degree murder. A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

## A. Corroboration of Accomplice Testimony

The Appellant contends that the accomplice testimony of Terry Cork was not independently corroborated. He asserts that Wiled McMilllin's testimony that, on the night of the murder, he saw the Appellant, Terry Cork, and Jody McPherson riding in a red car in the Middle City area is not credible. Specifically, he argues that

> the corroboration of McMillin that Haymon drove by that night is contradicted by accomplice (Cork) in that they give different directions. They also contradict in time. Cork testified under direct-examination it was between 11:00 and 11:30 p.m. but on cross-examination he says 1:00 or 1:15 a.m. McMillin testified it was between 1:00 and 1:15 a.m. However the store video contradicts both Cork and McMillin.

It is well-settled that a conviction may not be based solely upon the uncorroborated testimony of an accomplice. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994). This "very salutary rule" is designed to prevent the "obvious dangers" of allowing a defendant to be convicted solely on the basis of an accomplice's testimony. *Sherrill v. State*, 321 S.W.2d 811, 814 (Tenn. 1959). However, Tennessee law requires only a modicum of evidence in order to sufficiently corroborate the testimony of an accomplice. *State v. Copeland*, 677 S.W.2d 471, 475 (Tenn. Crim. App. 1984). With respect to the nature, quality, and sufficiency of the evidence necessary to corroborate an accomplice's testimony, this court has held:

> The rule of corroboration as applied and used in this State is that there must be some evidence independent of the testimony of the accomplice. The corroborating evidence must connect, or tend to connect the defendant with the commission of the crime charged; and, furthermore, the tendency of the corroborative evidence to connect the defendant must be independent of any testimony of the accomplice. The corroborative evidence must of its own force, independently of the accomplice's testimony, tend to connect the defendant with the commission of the crime. . . . The evidence corroborating the testimony of an accomplice may consist of direct evidence, circumstantial evidence, or a combination of direct and circumstantial

evidence. The quantum of evidence necessary to corroborate an accomplice's testimony is not required to be sufficient enough to support the accused's conviction independent of the accomplice's testimony nor is it required to extend to every portion of the accomplice's testimony. To the contrary, only slight circumstances are required to corroborate an accomplice's testimony. The corroborating evidence is sufficient if it connects the accused with the crime in question.

*State v. Griffis*, 964 S.W.2d 577, 588-89 (Tenn. Crim. App. 1997) (citations omitted). Furthermore, the jury is to determine the degree of evidence necessary to corroborate the testimony of an accomplice. *State v. Chris Billingsley*, No. 01C01-9506-CC-00166 (Tenn. Crim. App. at Nashville, May 16, 1996).

From consideration of the proof in the record before us, we find the evidence sufficient to corroborate the testimony of Terry Cork. Terry Cork testified that the Appellant picked him up in a red car and that he, McPherson, and the Appellant went to a field in the Middle City area, where the Appellant shot and killed McPherson. Wiled McMillin testified that the Appellant approached him "with a plot to help him kill Jod[y]." According to McMillin, the Appellant stated he wanted McPherson killed because "he didn't want to go back to prison. They had committed a robbery of Pete's Liquor Store." McMillin also testified that the Appellant offered him five hundred dollars if he would assist in the murder; however, McMillin refused. The Appellant then stated that he would get Terry Cork to help him. McMillin further corroborated the statements of Cork by testifying that he saw the Appellant, Cork, and McPherson riding in a red car in the Middle City area. The Appellant argues that this testimony is not credible because of time discrepancies between McMillin's testimony, Cork's testimony, and his presence at the Short Stop Store at 1:23 a.m. On redirect, McMillin stated that he didn't know the exact time he saw the Appellant on the night of the murder but that it "was around 1 to 3:00." Furthermore, the State's theory at trial was that the Appellant went to the Short Stop Store, and he then went "over to McIver Apartments and pick[ed] up Jodie McPherson and [took] him out and kill[ed] him." These discrepancies in time to which the Appellant refers would not preclude the jury from finding that he committed the murder. We reiterate that the jury is the primary instrument of justice to determine the weight and credibility to be given to the testimony of the witnesses and not this court. *Cabbage*, 571 S.W.2d at 835. Clearly taken together, these facts give credence to Cork's statements; thus, the requirement of corroboration has been satisfied.

## B. Alibi

As we have determined that the accomplice testimony is sufficiently corroborated, we further find the proof sufficient to support a conviction for premeditated first degree murder. The Appellant does not dispute that the elements of the crime were established at trial. Rather, he argues that the inconsistencies in the proof, specifically the five different statements given by co-defendant Terry Cork, in addition to the alibi testimony, excludes the Appellant as the perpetrator of the murder. We conclude otherwise.

In the light most favorable to the State, the proof at trial revealed that, during the late evening hours of July 19th, the Appellant picked up Terry Cork, and the two went "riding." The Appellant dropped Cork off at his aunt's house and later returned with Jody McPherson in the vehicle. The three men then drove to a field in Middle City, where the Appellant shot and killed McPherson. The motive for the murder was that the Appellant feared McPherson would speak with the police about the prior liquor store robbery the two men had committed. While the Appellant testified in his own defense at trial and presented several alibi witnesses in his defense, the proof is uncontroverted that the Appellant was at the Short Stop Store at 1:23 a.m. on the morning of the murder. Most of the witnesses providing an alibi testified only as to the Appellant's whereabouts prior to visiting the Short Stop Store. The only witness that testified that the Appellant returned home after visiting the Short Stop Store was his brother, Jamaal Haymon. As previously noted, the State's theory was that the Appellant went to the Short Stop Store, and then picked up Jody McPherson from McIver Apartments. Moreover, the record reflects that the alibi witnesses were family members of the Appellant. The determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are matters entrusted exclusively to the trier of fact and not this court. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). Like any other fact at trial, an alibi defense presents an issue of fact determinable by the jury. *Cole v. State*, 215 S.W.2d 824, 825 (Tenn. 1949); *Smith v. State*, 566 S.W.2d 553, 556 (Tenn. Crim. App. 1978). The jury chose to accredit the testimony of the State's witnesses and reject the contentions of the Appellant. The scope of our examination of the evidence is not equivalent to that of the jury's. In a challenge to the sufficiency of the evidence, this court does not retry the Appellant. We emphasize that our examination in a sufficiency review is not to revisit inconsistent, contradicting, implausible, or non credible proof, as these issues are resolved solely by the jury. Rather, we look to the record to determine whether there was substantive probative evidence to support the verdict. *State v. David Remus*, No. W1999-01448-CCA-R3-CD (Tenn. Crim. App. at Jackson, Mar. 8, 2000). The Appellant has had his day in court. Because we find the proof legally sufficient, this issue is without merit.

## II. Prosecutorial Misconduct

Next, the Appellant argues that the State committed prosecutorial misconduct by (1) "knowingly us[ing] perjured testimony of an accomplice, and even argu[ing] the truthfulness of his testimony to the jury[,]" and (2) "arguing facts to the jury not based on trial testimony." The test to be applied by the appellate courts in reviewing instances of prosecutorial misconduct is whether the conduct was so improper or the argument so inflammatory that it affected the verdict to the Appellant's detriment. *Harrington v. State*, 385 S.W.2d 758, 759 (Tenn. 1965). In measuring the prejudicial impact of any misconduct, this court should consider: (1) the facts and circumstances of the case; (2) any curative measures undertaken by the court and the prosecutor; (3) the intent of the prosecution; (4) the cumulative effect of the improper conduct and any other errors in the record; and (5) the relative strength or weakness of the case. *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976); *see also State v. Buck*, 670 S.W.2d 600, 609 (Tenn. 1984).

## A. Perjured Testimony

The Appellant bases his first contention on a statement made by Attorney General Bivens to Terry Cork, during the investigation of the case, in which Bivens encourages Cork to give the State information regarding the murder:

> You know, the law provides that if you provide information[,] that's considered a mitigating factor on any sentence. I'm not going to make any deal with you that I'm not going to charge you with this – I'm not going to charge you . . . with that. Uh, . . . first-degree murder carries anywhere from the death penalty to life in prison. Second degree murder carries twenty-five (25) to forty (40) years. . . . I mean, if you want to help yourself . . . you can, you know, at this point there's not been anything that can help us.[1]

The Appellant contends that the statement made by Bivens constituted an implied deal that the State would allow Cork to enter a guilty plea to second degree murder in return for his testimony against the Appellant.[2] Furthermore, he argues that the State committed misconduct by soliciting testimony from Cork to the effect that no deal was offered when Cork made this statement. The State asserts that, while "[i]t is clear that the State desired Terry Cork's statement in its case against Appellant and there was an explicit encouragement that Cork's provision of information would be considered a mitigating factor on his sentence, . . . there is no indication of an agreement or promise by the State." We agree. Accordingly, we conclude that, based upon the facts and circumstances of this case, the State did not commit misconduct by offering perjured testimony.

Within this section of the Appellant's brief, he also asserts that the State again committed misconduct when it solicited the following false testimony from Cork:

> Q. Okay. When did you come to the knowledge of Mr. McPherson working for the Tennessee Bureau of Investigation?
>
> A. After I was picked up in '99.
>
> Q. Okay. When you say picked up in '99, do you mean on the bank robbery?
>
> A. Yes, ma'am.
>
> Q. Okay. That was in May, is that correct?

---

[1]The exhibits introduced at trial are not included in the record. It is the duty of the Appellant to prepare a complete and accurate record on appeal. Tenn. R. App. P. 23(b).

[2]Ultimately, Cork did plead guilty to second degree murder with an agreed sentence range of fifteen to twenty-five years to be served concurrently with a prior federal charge.

A.  Yes, ma'am.

The Appellant contends that, in an interview conducted on March 30, 1999, Cork stated he was aware of McPherson's involvement with the T.B.I., and that the State was aware of this information. However, this testimony was solicited by defense counsel not the State.  Furthermore, as argued by the State, the Appellant never establishes the relevance of Cork's knowledge of this fact and why this discrepancy is relevant to his defense.  The Appellant's argument is without merit.

## B. Arguing Facts not in Evidence

Finally, the Appellant argues that the attorney general committed prosecutorial misconduct during closing argument.  Our supreme court has long recognized that closing argument is a valuable privilege for both the State and the defense and has allowed wide latitude to counsel in arguing their cases to the jury.  *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1994).  Trial judges in turn are accorded wide discretion in their control of those arguments, *State v. Zirkle*, 910 S.W.2d 874, 888 (Tenn. Crim. App. 1995), and this discretion will not be interfered with on appeal in the absence of abuse thereof.  *Smith v. State*, 527 S.W.2d 737, 739 (Tenn. 1975).  Notwithstanding such, arguments must be temperate, based upon the evidence introduced at trial, relevant to the issues being tried, and not otherwise improper under the facts or law.  *Coker v. State*, 911 S.W.2d 357, 368 (Tenn. Crim. App. 1995).  We are mindful of the oft quoted principle that a prosecutor must be free to present his arguments with logical force and vigor, "[b]ut, while he may strike hard blows, he is not at liberty to strike foul ones."  *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 633 (1935).

It is impossible to set out in detail what can and cannot be said in closing argument.  Various factors are involved in this determination including the facts of the particular case and oftentimes responses to argument of opposing counsel. Within the closing argument, five general areas of prosecutorial misconduct are recognized:

> 1. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.
>
> 2. It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant. *See State v. Thornton*, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999); *Lackey v. State*, 578 S.W.2d 101, 107 (Tenn. Crim. App. 1978); TENN. CODE OF PROF'L RESPONSIBILITY DR 7-106(C)(4).
>
> 3. The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury. *See Cauthern*, 967 S.W.2d at 737; *State v. Stephenson*, 878 S.W.2d 530, 541 (Tenn. 1994).
>
> 4. The prosecutor should refrain from argument which would divert the jury from its

duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict. *See Cauthern*, 967 S.W.2d at 737; *State v. Keen*, 926 S.W.2d 727, 736 (Tenn. 1994).

5. It is unprofessional conduct for a prosecutor to intentionally refer to or argue facts outside the record unless the facts are matters of common public knowledge.

*State v. Dennis R. Goltz*, No. M2001-02019-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 15, 2003) (for publication) (citing STANDARDS RELATING TO THE PROSECUTION FUNCTION AND THE DEFENSE FUNCTION §§ 5.8-5.9 Commentary (ABA Project on Standards for Criminal Justice, Approved Draft 1971)).

The Appellant challenges the following statements made by the prosecutor during closing argument:

(1) Kimberly Williams says Raymon Haymon called her and wants her to take him over to see Stephanie McPherson, because Jody has been found dead down at Middle City near a hog pen.

Raymon Haymon tells you that he didn't go down there. He went straight to Stephanie McPherson's. And Kimberly Williams tells you that he talks about he was shot in the chest, in the head, and in the back. He hadn't seen the body. It's just a few hours after the body is discovered. All the officers tell you, including Tim Isabell, that the body is laying there face up, nobody's bothered the body, and you can see that he's been shot in the chest. You can't see that he's been shot in the back or in the head. You can see he's been shot in the chest, is the only one you can see. Stephanie McPherson told you nobody called her and told her how her husband was killed.

Kimberly Williams only testified that the Appellant stated that Jody McPherson "was shot three times," and the State concedes that Stephanie McPherson did not testify who called her and who told her how her husband was killed. However, Officer Terry McCreight testified that the Appellant told him that Jody McPherson was shot in the head, back, and chest. The Appellant relayed that he learned this information from Desmon Bryant, who was a relative of Stephanie McPherson. Officer McCreight testified that, to his knowledge, Bryant was not privy to this information. The State argues that, while Attorney General Bivens may have confused the persons who testified to certain facts in the case, the facts were evidence. We agree and conclude that General Bivens did not intentionally misstate the evidence.

(2) And why, at 1:23 in the morning, does he go from the east side of town, passed Dodge store, all the way to the west side of town to Short Stop to spend a quarter to buy a bag of chips? . . . Because you can see McIver Apartments from there. You

can go over to McIver Apartments and pick up Jody McPherson and take him out and kill him.

The Appellant argues that this statement is inaccurate because Stephanie McPherson testified that she and Jody lived at 1216 Tucker Circle at the time he was murdered. The State's theory is based upon the testimony of the Appellant that he dropped Jody McPherson off at McIver Apartments between 11:00 and 11:30 on the night of the murder, the videotape placing the Appellant at the Short Stop Store at 1:23 a.m., and McMillin's testimony that he saw the Appellant, Cork, and McPherson together in a red car between the hours of 1:00 and 3:00 a.m. We conclude that the State did not intentionally mislead the jury as to the inferences it may have drawn.

(3) There's not any physical evidence against Mr. Cork at the scene.

A cell phone linked to Cork was found at the scene. Defense counsel objected to this statement and asked for a curative instruction, which was refused. While this statement is incorrect, we again conclude that the State did not intentionally misstate the evidence. Furthermore, the jury was instructed, "you should disregard any argument made by the attorneys which you find is not supported by the evidence." An appellate court must presume that the jury followed the instruction given by the trial court. *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000).

## CONCLUSION

Based upon the foregoing, we conclude the evidence is more than sufficient to support the Appellant's conviction for premeditated first degree murder. In addition, we conclude that the State did not commit prosecutorial misconduct. Accordingly, the judgment of the trial court is affirmed.

_____
DAVID G. HAYES, JUDGE