Johnny Lee SMITH, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Feb. 1, 1978.

Certiorari Denied by Supreme Court
May 8, 1978.

Mose J. Davie, Nashville, for appellant.

Brooks McLemore, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Jeffrey S. Henry, Asst. Dist. Atty. Gen., Murfreesboro, for appellee.

## OPINION

DUNCAN, Judge.

The defendant, Johnny Lee Smith, was convicted in the Rutherford County Circuit Court of rape and received a penitentiary sentence of 20 years.

In this appeal, the defendant makes 21 assignments of error, raising, among numerous other things, evidentiary, jury, witness, and instruction complaints. Other complaints relate to the rulings of the court on various motions, to the admission of certain items of evidence, and to the trial court's conduct towards defense counsel. We find no reversible errors in this case and affirm the conviction.

■ First, in considering an assignment of error challenging the legal sufficiency of the convicting evidence, we are bound by the law that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and establishes their credibility. It also displaces the presumption of a defendant's innocence and raises a presumption of his guilt, thereby placing the onus upon him of showing that the evidence preponderates against the verdict and in favor of his innocence. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385 (1960).

This case involves the rape of a twenty year old Middle Tennessee State University coed on the afternoon of February 26, 1976, in Rutherford County, Tennessee. The victim was sitting in her car on the University campus between 1:15 and 1:30 p. m. when a black male pulled up in a pick-up truck, got out, approached the victim's car, and at gun point forced her to drive to a remote area where he required her to lie on his jacket, after which he forcibly had sexual intercourse with her. After the act was accomplished, the man removed his T-shirt, which was used to "wipe" themselves, and the shirt was then thrown in the bushes. The victim was in her menstrual cycle and a "tampon" protective device had been removed by the man at the scene. They returned to the University campus where the man released her. The victim proceeded to her home, related the events to her father and mother, took a bath, and in company with her parents proceeded to the police station where she reported the events, giving a detailed description of her assailant and his pick-up truck.

The evidence leaves no question but that this victim was raped, and we find that the jury was fully warranted in finding that the defendant was her assailant. The victim identified the defendant in a lineup and at the trial as her assailant. She was in his presence for approximately one hour on that afternoon and was able to give a detailed description of his appearance, his clothing, and his vehicle to the police. When apprehended, the defendant's personal appearance, his clothing, and his vehicle matched almost perfectly with those descriptions. Additionally, the victim identified the defendant's pick-up truck in a police lot, and at the trial she identified a photograph of it. A jacket and a pair of shorts belonging to the defendant were tested and evidence was introduced that bloodstains were found on them. The police found at the scene of the crime the T-shirt and the "tampon" which had been testified about by the victim.

The defendant testified and denied any connection to this event. His explanation for the bloodstains on his jacket was that he had used that jacket in attempting to extract a fish hook from a "water dog" that he had caught while fishing earlier in the day. We note that expert testimony established that the bloodstains on the jacket were of human origin. It was the defendant's position that on the date in question

at some time after 12:00 noon he was at a "7-Eleven Market," and sometime thereafter went home, arriving at his house about 2:20 p. m. He testified that he was not at the market after 1:30 p. m. He offered one witness who testified that he saw the defendant at the market between 1:00 and 1:30 p. m. on that date, but on cross-examination this witness conceded that he was not sure of the date or of the time. Considering the evidence in this record, and considering the time frames involved, the defendant could very well have been at the market at the time this witness referred to and still have committed the crime involved herein.

■ At any rate, the defendant's alibi defense was rejected by the jury. The defense of alibi presents an issue of fact determinable by the jury, as the exclusive judges of the credibility of the witnesses testifying in support of that defense and of the weight to be given their testimony. *Green v. State,* 512 S.W.2d 641 (Tenn.Cr. App.1974).

■ Further, the identity of the defendant as the person who raped this victim was a question of fact for the determination of the jury, upon consideration of all the competent proof. *Stubbs v. State,* 216 Tenn. 567, 393 S.W.2d 150 (1965).

■ Because of the positive and certain testimony of the victim in this case, the jury could have based a conviction on her testimony alone, if they chose to believe her and not the defendant. *Bolin v. State,* 219 Tenn. 4, 405 S.W.2d 768 (1966). In *Bolin,* the court said:

"Belief or disbelief of the victim is a decision which is within the jury's exclusive province, and it is obvious from their verdict that they believed the victim and not the defendant. At this appellate level we must adopt this evaluation of credibility as our own in accordance with established and well founded rules of trial and appellate practice." 219 Tenn. at 11, 405 S.W.2d at 771.

■ The evidence fully supports the jury's finding in this case. It does not preponderate against the verdict. *Gulley v. State,* 219 Tenn. 114, 407 S.W.2d 186 (1966). Also, the defendant's relatively light sentence in this serious case is within the limits allowed by law for this offense, T.C.A. § 39–3702, and, therefore, it cannot be said that the jury's verdict shows passion, prejudice or caprice, as is insisted by the defendant. *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963). We overrule the defendant's assignments pertaining to the evidence.

In three of his assignments, the defendant alleges two basic propositions to the effect that (1) the State suppressed and destroyed a tape recording of an interview between the defendant and the investigating officer, Detective Jim Cook, and that (2) the defendant was not allowed to inspect a written statement allegedly made by the victim to Detective Cook. The defendant argues that this alleged tape recording and statement would have been of an exculpatory nature. We find no merit to these assignments.

■ Regarding the first proposition, apparently, tape recordings were made of the two interviews with the defendant. The defendant was furnished with a copy of the second tape, but the first tape, containing the defendant's initial interview, had been lost. The trial court held an exhaustive hearing on the missing tape and interrupted the trial to bring in numerous witnesses in an attempt to find it, or in the alternative to establish the reasons for its absence. The evidence is convincing that this tape was accidentally lost, mislaid or misfiled by the police department. There is no indication whatsoever that its loss was occasioned by any willful or contrived action by the State or its agents. Moreover, the record documents that there was nothing on the missing tape that was not contained in the second tape which was provided to the defendant. The defendant did not produce any evidence to the court nor in his testimony to the jury to show that the missing tape contained any exculpatory matters or any other information that would have been beneficial to him. Certainly, it could have

contained nothing regarding the voluntariness of his statement, as at no time did the defendant ever indicate that he had been coerced or mistreated by the police. In fact, he testified that Detective Cook had not pressured him in any way. Also, out of an abundance of precaution, the trial judge ruled that the State could not introduce any evidence about the missing tape, but that he would allow the defendant full range to develop any evidence he desired about its contents. We can see no way in which the court could have been more fair to the defendant in his ruling on this question, and we find nothing in this record to show that any prejudice resulted to the defendant because of the absence of this tape.

█ Regarding the second proposition, apparently, the defendant concluded from testimony at the preliminary hearing that the victim had given a written statement to Detective Cook. The confusion here appears to have been brought about over certain written notes which Detective Cook had made of that interview. A copy of these notes was furnished to the defendant. At the present trial, Detective Cook and the victim both testified that she did not sign any written statement. Thus, if it did not exist, it could not be produced.

█ Likewise, we find no merit to the defendant's contention that the court erred in its ruling on the defendant's motion for a change of venue.

The trial court held two pre-trial hearings on this question and numerous witnesses were heard. The evidence strongly supports the court's finding that there was no great excitement about this case in Rutherford County. The victim of this crime was not a resident of that county but resided in an adjoining county. The offense occurred on February 26, 1976, and the trial was commenced on September 13, 1976. As was shown during the examination of the jurors on voir dire, the initial publicity, due to the lapse of time, had left little impression on the jurors' minds about the crime. There was no difficulty in obtaining a jury in this case. The testimony of the jurors showed that an impartial jury was selected. Also,

the trial developments, and the reasonable sentence fixed for the defendant, affirmatively show that the defendant's apprehensions of racial prejudice were not well founded. We find no abuse of discretion in the court's denial of a change in venue. *Swain v. State*, 219 Tenn. 145, 407 S.W.2d 452 (1966).

Next, we find that the search of the defendant's house, pursuant to a search warrant, was legal.

█ At the trial, the defendant's complaint about the search warrant was that it was not returned properly. We have examined that document and find that it shows on its face that a proper return was made before the general sessions judge. Further, the defendant argues in his brief that the seized items were not retained in the custody of the issuing magistrate. This is not a tenable contention. Any defect in the ministerial functions involved in the return of a search warrant and the handling of the seized items cannot vitiate the validity of a lawful search. *Squires v. State*, 525 S.W.2d 686 (Tenn.Cr.App.1975). A proper chain of custody of the seized items was shown in this case and that was sufficient. Further, from our examination of the search warrant, we find that it comports with the two-pronged test enunciated by the *Aguilar-Spinelli* cases. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. U. S.*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *see also State v. Parker*, 525 S.W.2d 128 (Tenn.1975). We hold that the trial judge properly admitted the seized items into evidence.

Equally unmeritorious are the defendant's seven assignments regarding his jury complaints.

█ After a hearing on the selection procedures used by the Rutherford County Jury Commission in making up the jury panels, the trial judge found no irregularity, and that the jury panels had been lawfully selected. We find that the record supports this ruling. There was no showing that blacks or any other class of citizens

were systematically excluded from the jury panels. The proof showed that the names of a few black, as well as white, teachers and ministers had been removed from the jury list. T.C.A. § 22–103 exempts from jury service persons in these occupations. However, these exemptions are personal to the individual, to be claimed or waived by such person alone, *East v. State*, 197 Tenn. 644, 277 S.W.2d 361 (1955), and while the jury commission was incorrect in removing such names on their own initiative, this technicality cannot rise to the level of documenting a claim of systematic exclusion of blacks from the jury list. Testimony showed that the names that go into the jury box are placed there without regard to any particular race. In fact, most of the names are unknown to the jury commissioner. Black citizens were summoned and considered for jury duty in the present case.

In *State v. Jefferson*, 529 S.W.2d 674 (Tenn.1975), the Supreme Court adopted Judge Walker's excellent opinion written for the Court of Criminal Appeals, and this opinion dealt with similar jury complaints as are raised herein.

Judge Walker in his opinion had this to say regarding the question of racial imbalance on jury panels:

> "A defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the jury roll from which petit jurors are drawn. Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759." 529 S.W.2d at 680.

■ Regarding the defendant's complaint that the jurors underwent voir dire examination in the presence of each other, the defendant concedes in his brief that there is no merit to this assignment. The trial court followed proper procedures in this regard. *State v. Jefferson, supra.* Also, the court did not abuse its discretion in not excusing two jurors who had some connection with Middle Tennessee State

University. *Vines v. State*, 190 Tenn. 644, 231 S.W.2d 332 (1950). The University, as an entity, had no connection with this case. The fact that the victim was a student there and was abducted from its campus would not, by itself, disqualify from jury service a teacher at the University or one of the jurors whose wife worked there. There was nothing in the voir dire of these two jurors to show that they should have been disqualified. To the contrary, it showed that they were qualified and could act as impartial jurors in this case.

■ We overrule the defendant's belated lineup complaint. The defendant raised no objection to the victim's identification of the defendant or of the procedures used at the lineup. Additionally, the record affirmatively shows that the lineup was properly held. There is not the slightest hint of a taint in the victim's identification of the defendant.

In another assignment, the defendant says that the investigation conducted by Detective Jim Cook was based on vengeance and malice towards the defendant. The defendant's counsel himself brought before the jury that the defendant was alleged to have been implicated in another assault on another victim, and that after this alleged assault occurred, Detective Cook married that victim. Detective Cook denied in his testimony that he had any prejudice against the defendant, and even the defendant himself conceded that Detective Cook had treated him fairly in their interviews. At any rate, it was the jury's duty to weigh this evidence in their consideration of Detective Cook's testimony. In passing, we would note that a substantial part of Detective Cook's testimony was corroborated by other witnesses. We find no error.

■ The defendant complains that the trial judge threatened and pressured defense counsel at the trial. The defendant's brief is totally inadequate in this regard. He has not described or argued in his brief any facts or details to document this claim. We have read this record from front to

back, and the comments that the defendant is apparently referring to are nothing more than harmless banter between the bench and counsel that are not unusual in long hard fought trials. From our review of the record, we find that it is replete with constant objections on the part of defense counsel, some of them being warranted, and many others being of a frivolous nature. Certainly, the trial judge's patience was sorely tried in this case. Notwithstanding, he exhibited great restraint and went out of his way to afford courtesy to the defendant and his counsel. The trial judge, on several occasions, interrupted the trial to allow the defendant to interpose and develop new issues, and he allowed full opportunity to the defendant to subpoena new witnesses. The record shows that he was lenient and patient with the defendant's counsel and took considerable pains to insure that the defendant received a fair trial. We find the defendant's complaints against the trial judge to be without merit.

■ The defendant alleges error in Detective Cook not sending to the State laboratory for analysis of the T-shirt and "tampon" found at the scene of the crime. Detective Cook's testimony on this point and his reasons for not doing so were developed before the jury. It was the jury's function to weigh Detective Cook's testimony in light of that evidence. Also, if the defendant wanted to have these items tested, it was incumbent upon him to make a timely request. This was not done. We find no error. *State v. Gaddis,* 530 S.W.2d 64 (Tenn.1975).

The defendant's contention that he was not notified of his arraignment date is frivolous. Equally so is his argument that the trial judge erred in not charging on the parole provisions of T.C.A. § 40–2707, as is evidenced by his concession that the point is without merit. The trial judge correctly followed the mandates of *Farris v. State,* 535 S.W.2d 608 (Tenn.1976) in *not* charging on these parole considerations. We point out that neither of the above complaints were raised at the trial level.

■ In his 21st assignment of error, the defendant complains about the testimony of Ms. Janet Estes, the serologist who testified in this case. The trial judge found that this witness was an expert in her field. We find that he did not abuse his discretion in admitting her testimony. The defendant insists that her testimony is contrary to the information contained in the State laboratory written reports. We have compared her testimony with the laboratory report which was submitted and read during the testimony of Detective Cook, and we find that it is consistent. Also, we point out that the defendant offered no objection to this witness' testimony at the trial. The complaint is without substance.

We note that in the final paragraph of the defendant's brief, he states: "Significantly, the transcript in this case does not have any notice as to the business in the jury room T, pages 867–868."

We are unable to determine from this comment just what complaint is being made. A review of the record at the page cited by the defendant indicates that the trial judge, the attorney general, the defendant's counsel and the court reporter were admitted to the jury room at which time the following colloquy occurred:

"THE COURT: Did you want to see me?

JUROR: Yes, Sir.

THE COURT: Is it a question of law or whether or not you want to go to lunch now? If it is about whether you want to take a break, that is all right.

JUROR: Your Honor, I think the question is how we are to select a foreman.

THE COURT: The first thing you do is select your foreman, and after that it is up to you all as to how you deliberate. That is all I can say to you."

■ As stated, we do not know what complaint the defendant is making, but we note that the record suggests that the defendant was not present during these proceedings. At least, the record does not show it if he was. In passing, we deem it necessary to point out that any proceedings involving the jury after it has retired for

deliberations should be conducted in open court and in the defendant's presence. However, because no objection was made to these proceedings, and due to defense counsel's presence and the inconsequential nature of the subject matter discussed at that proceeding, we find that any error that could be said to be present was harmless. The defendant has alleged no way in which he has been prejudiced and we find that he was not. We re-emphasize that all contacts with deliberating jurors should be conducted in open court with all parties and their counsel present.

We find no reversible errors in this case. We overrule the defendant's assignments of error, and the judgment of the trial court is affirmed.

TATUM and BYERS, JJ., concur.