IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

# STATE OF TENNESSEE v. REGINALD GARNER BROWN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 97-A-429     Cheryl  Blackburn, Judge**

---

**No. M1999-00002-CCA-R3-CD - Decided June 23, 2000**

---

A Davidson County jury convicted the appellant, Reginald Garner Brown, of one (1) count of first degree felony murder, one (1) count of especially aggravated kidnapping, one (1) count of aggravated robbery and one (1) count of aggravated burglary.  The trial court sentenced the appellant as a Range I offender to consecutive terms of life for murder, twenty-five (25) years for especially aggravated kidnapping, twelve (12) years for aggravated robbery and six (6) years for aggravated burglary.  On appeal, the appellant contends that the trial court erred in failing to allow him to impeach a state witness with extrinsic evidence of a prior inconsistent statement.  He further argues that the evidence is insufficient to sustain his convictions because the state failed to prove identity.  After thoroughly reviewing the record before this Court, we conclude that due to the appellant's failure to lay a proper foundation for the impeachment, the trial court did not err in failing to allow the appellant to impeach the witness with extrinsic evidence of a prior inconsistent statement.  Furthermore, as a result of appellant's failure to present an offer of proof regarding the proposed testimony, we are unable to say that the interests of justice should excuse the lack of a proper foundation.  Finally, we conclude that the evidence is sufficient to sustain the jury's finding of guilt.  Therefore, the judgment of the trial court is affirmed.

**T.R.A.P. 3 Appeal as of Right; Judgment of the Criminal Court of Davidson County is Affirmed.**

SMITH, J., delivered the opinion of the court, in which WADE, P. J., and WEDEMEYER J., joined.

Paula Ogle Blair, Nashville, Tennessee attorney for the appellant, Reginald Garner Brown.

Paul G. Summers, Attorney General and Reporter and Marvin E. Clements, Jr., Assistant Attorney General and Victor Johnson, District Attorney General, Roger Moore, Sharon Brox, Assistant District Attorneys, for the appellee, State of Tennessee

# OPINION

## FACTS

In the late evening hours of April 1, 1996, Elton and Christine Maupins were lounging in the bedroom of their home when they heard people running down the hallway. Mr. Maupins jumped up, closed the bedroom door and instructed his wife to call the police. Instead, Mrs. Maupins dialed the operator, but before she had an opportunity to speak with the operator, gunshots were fired through the bedroom door, striking Mr. Maupins in the chest. The door opened, and two men clad in dark clothing pushed inside, demanding money from the victims. Mr. Maupins informed the intruders that they had no money in the house and he then fell silent.

Mrs. Maupins described the intruders at trial. She testified that "Intruder Number One" was wearing a blue jacket and dark pants, a black or navy baseball cap, and black gloves. "Intruder Number Two" wore a dark blue and green sweatshirt with a hood and surgical gloves. Intruder Number One carried a handgun, and Intruder Number Two carried a shotgun. Although the intruders wore bandanas across their faces, Mrs. Maupins testified that she could see both individuals' eyes.

The perpetrators began searching the drawers in the Maupins' bedroom for money and pushed the mattress from the bed. When they could not locate any money, Intruder Number One pulled a trunk from the closet and attempted to open it. The trunk would not open, so Intruder Number Two directed Mrs. Maupins to the kitchen at gunpoint to find a hammer. As they walked to the kitchen, Mrs. Maupins observed a third man standing in her living room. According to Mrs. Maupins, Intruder Number Three was shorter than the other two men and was dressed in black clothing, a ski mask and surgical gloves. While Mrs. Maupins searched for the hammer in the kitchen, a fourth man walked through the back door. Mrs. Maupins described this man as "husky" and bigger than the rest. Although Intruder Number Four was not wearing a mask, Mrs. Maupins was unable to see his face.

Intruder Number Two led her back into her bedroom where her husband's body remained in the doorway. Intruder Number One had shot the lock off of the trunk and off of a safe, but did not find any money. Intruder Number One then called someone on the telephone, complaining to the person on the other end that there was no money in the Maupins' home. When he finished his telephone call, Intruder Number One snatched the cord from the telephone and tied Mrs. Maupins' hands with the cord. Intruder Number One threatened to kill Mrs. Maupins if she identified any of the men, and then they left through the back door.

Mrs. Maupins testified at trial that the intruders left with approximately $70, which was taken from her purse and her husband's pockets. Mr. Maupins died as a result of the gunshot wound to his chest.

The next day, a detective with the police department showed Mrs. Maupins a photo array in the hope that she might identify the perpetrators of the crime. Although she was not certain, she indicated that the appellant, whose picture was in the array, appeared to be one of the intruders. Mrs. Maupins testified that she was afraid to identify anyone the day after the incident, but tentatively identified the appellant's photo because she recognized his eyes.

At trial, Mrs. Maupins positively identified the appellant as Intruder Number One. She stated that she had the most contact with Intruder Number One and was able to view him from a close distance. She further testified that, at one point during the incident, Intruder Number One's hat fell off of his head, and when she reached to hand the hat to him, she was able to catch a glimpse of him. Mrs. Maupins stated that she was certain that the appellant was Intruder Number One because his eyes were very familiar to her.

The state presented evidence at trial of the appellant's presence near the victims' home on the evening of April 1. Dwight Chambers, the brother of the victim, testified that at approximately 6:30 p.m., he gave the appellant a ride to Jack's Market, which is within two (2) blocks of the Maupins' home. In addition, Reba Holmes stated that she observed the appellant walking toward the Maupins' home with two (2) other men approximately fifteen (15) minutes prior to the robbery.

The appellant presented an alibi defense at trial. Samuel Douglas, a friend of the appellant, testified that he and the appellant habitually socialized on the first of every month. He stated that the appellant received an SSI check on the first of the month, and they typically used the money to purchase alcohol and/or drugs. Douglas testified that on April 1, the appellant was at his (Douglas') home until 4:00 p.m., left, then returned at approximately 9:00 p.m. Douglas stated that the appellant did not leave until 2:00 a.m. on the following morning. Although Douglas was certain that he was with the appellant on April 1, he could not testify as to which day of the week the events took place. Additionally, Douglas could not distinguish the events on April 1 from the events on the first of any other month.

The jury found the appellant guilty of one (1) count of first degree felony murder,[1] one (1) count of especially aggravated kidnapping, one (1) count of aggravated robbery and one (1) count of aggravated burglary. The trial court sentenced the appellant as a Range I offender to consecutive terms of life for murder, twenty-five (25) years for especially aggravated kidnapping, twelve (12) years for aggravated robbery and six (6) years for aggravated burglary. From these convictions, the appellant now brings this appeal.

## PRIOR INCONSISTENT STATEMENT

In his first issue, the appellant contends that the trial court erred in failing to allow him to impeach Christine Maupins with extrinsic evidence of a prior inconsistent statement. The appellant attempted to introduce testimony that Mrs. Maupins previously stated to her mother-in-law that she could not identify any of the intruders in her home. Although the appellant acknowledges that a proper foundation for such extrinsic evidence was not laid, he argues that, because identity was a material issue at trial, the "interests of justice" required the admission of such testimony. Additionally, the appellant alleges that the trial court erred in failing to allow him to re-call Christine Maupins to lay a proper foundation for the prior inconsistent statement testimony.

During cross-examination of Christine Maupins, defense counsel inquired whether Mrs. Maupins "had quite a few opportunities to talk to [her] mother-in-law about what had taken place,"

---

[1] The appellant was also charged with premeditated first degree murder. The jury returned a guilty verdict on the lesser offense of second degree murder, and the trial court merged the second degree murder conviction into the first degree felony murder conviction.

and Mrs. Maupins responded that she had. Subsequently, the appellant attempted to call Mrs. Maupins' mother-in-law, Loistine Jackson, to testify as to the substance of her conversations with Mrs. Maupins regarding the night of April 1. Specifically, counsel proposed to call Jackson to testify that Mrs. Maupins previously stated that she could not see the faces of any of the intruders and, thus, could not identify any of them. The state objected to such testimony on the grounds that defense counsel had not laid a proper foundation for extrinsic evidence of a prior inconsistent statement under Rule 613(b) of the Tennessee Rules of Evidence. The trial court agreed and further determined that, because defense counsel effectively cross-examined the victim regarding her inability to positively identify the intruders following the incident, Jackson's testimony would have been cumulative. As a result, the trial court excluded Jackson's testimony.

Rule 613(b) of the Tennessee Rules of Evidence provides, in pertinent part, "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require." Thus, the admissibility of extrinsic evidence of a prior inconsistent statement is contingent upon "whether the witness admits or denies having made the prior inconsistent statement," and such evidence is inadmissible unless the witness either denies or equivocates as to having made the statement. State v. Martin, 964 S.W.2d 564, 567 (Tenn. 1998).

In the present case, although defense counsel questioned Mrs. Maupins as to whether she had "quite a few opportunities" to speak with Jackson about the offenses committed on April 1, counsel never asked Mrs. Maupins about any specific statements she might have made to her mother-in-law. Nor was Mrs. Maupins afforded the opportunity to explain the alleged prior inconsistent statement. Therefore, counsel failed to lay a proper foundation to introduce extrinsic evidence of a prior inconsistent statement, and the trial court properly excluded the testimony on this basis.

Despite the lack of a proper foundation the appellant insists that the "interests of justice" require admission of the testimony. *See* Tenn. R. Evid. 613(b). He further maintains that the trial court erred in finding that Jackson's testimony would have been cumulative. Although not raised by either party, this Court notes that the appellant failed to present an offer of proof as to Jackson's proposed testimony. In order for an appellate court to rule upon an issue predicated upon the exclusion of witness testimony, the evidence excluded must appear in the record in the form of an offer of proof. Tenn. R. Evid. 103(a)(2); State v. Goad, 707 S.W.2d 846, 852-53 (Tenn. 1986); State v. Robinson, 971 S.W.2d 30, 40 (Tenn. Crim. App. 1997). If the proposed testimony is absent from the record, this Court is precluded from considering the issue. State v. Robinson, 971 S.W.2d at 40.

Although the trial court based its determination that Jackson's testimony would be cumulative on counsel's statements regarding the proposed testimony, statements made by counsel during a hearing do not constitute evidence. State v. Dykes, 803 S.W.2d 250, 255 (Tenn. Crim. App. 1990). Additionally, the trial court gave the appellant the opportunity to present an offer of proof for the record, but the appellant failed to do so. The appellant's failure to present an offer of proof becomes especially significant in this case in that Mrs. Maupins was never questioned regarding any statements made to Jackson. Thus, this Court is unable to determine whether the prior statements were, in fact, inconsistent with Mrs. Maupins' trial testimony. The failure to make an offer of proof, therefore, precludes full appellate review of this issue.

Finally, the appellant claims that the trial court erred in failing to allow him to re-call

Christine Maupins to properly lay a foundation for the extrinsic evidence. The decision to allow the re-call of a witness rests within the trial court's discretion. State v. Caughron, 855 S.W.2d 526, 539 (Tenn. 1993). Defense counsel acknowledged at trial that she was aware of Mrs. Maupins' allegedly inconsistent statements prior to her testifying. Thus, the defense had ample opportunity to question Mrs. Maupins during cross-examination about her prior statements, but did not. Moreover, because the appellant failed to present an offer of proof as to the allegedly inconsistent statement, the appellant cannot demonstrate how he was prejudiced by the trial court's unfavorable ruling. Therefore, we conclude that the trial court did not abuse its discretion in refusing to allow the appellant to re-call Mrs. Maupins.

This issue is without merit.

## SUFFICIENCY OF THE EVIDENCE

In his final issue, the appellant challenges the sufficiency of the convicting evidence. The appellant asserts that the evidence was insufficient to establish his identity as a perpetrator of the crimes committed in light of the various discrepancies in the evidence presented at trial. Specifically, he argues that his physical description does not fit any of the victim's descriptions of the intruders in her home. Secondly, he contends that even though Mrs. Maupins positively identified him at trial, she was not able to identify him from a photographic lineup. Finally, he claims that the evidence is insufficient because he presented evidence of an alibi at trial.

When an appellant challenges the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). A jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the state. State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). On appeal, the state is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom. Bigbee, 885 S.W.2d at 803; Harris, 839 S.W.2d at 75. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

At trial, Mrs. Maupins described Intruder Number One as approximately 5'7" to 5'9" in height with a medium build. However, she acknowledged that her testimony regarding the perpetrator's height was merely a guess. She stated, "by me being so short, you know, everybody seems tall, you know. I know they was tall mens [sic]."[2] The appellant presented testimony that he measures approximately 6'4" in height.

Mrs. Maupins positively identified the appellant at trial as Intruder Number One. She testified that, among all of the intruders, she had the most contact with Intruder Number One and was

---

[2] The victim testified that she is approximately 5'1" in height.

able to view him from a close distance. She stated that, even though his face was covered, she could see Intruder Number One's eyes. She further testified that, at one point during the incident, Intruder Number One's hat fell off of his head, and when she reached to hand the hat to him, she was able to catch a better glimpse of him.

Mrs. Maupins admitted that she was unable to make a positive identification of the appellant in the photographic lineup on the day following her husband's murder. She explained that she was apprehensive about making an identification as a result of the perpetrators' threats to kill her. However, she informed the police that the photo depicting the appellant appeared to be one of the perpetrators because she recognized the appellant's eyes.

Samuel Douglas testified that he and the appellant socialized on the afternoon and evening of April 1. He stated that on that day, he was with the appellant at his home until 4:00 p.m.. The appellant left and then returned at approximately 9:00 p.m. According to Douglas, the appellant did not leave until 2:00 a.m. on the following morning. Although he was certain that he was with the appellant on April 1, Douglas did not know on which day of the week the events took place. Additionally, he could not distinguish the events on April 1 from the events on the first of any other month.

The determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are matters entrusted exclusively to the trier of fact, not this Court. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). Like any other fact at trial, an alibi defense presents an issue of fact determinable by the jury. Smith v. State, 566 S.W.2d 553, 556 (Tenn. Crim. App. 1978). Likewise, the identification of a defendant as the person who committed the offense is a question of fact for the jury to determine. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); State v. Phillips, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986). The testimony of the victim identifying the defendant as the perpetrator of the crime is sufficient, in and of itself, to support a conviction. Strickland, 885 S.W.2d at 87.

The victim positively identified the appellant as one of the intruders in her home on the night of April 1. Despite the various conflicts within the proof at trial, the jury chose to resolve those conflicts in favor of the state's witnesses. Furthermore, even though the appellant presented an alibi defense, the jury was free to reject that defense. On appeal, this Court cannot reassess or reevaluate the evidence or overturn the jury's determination on issues of fact. State v. Cabbage, 571 S.W.2d at 835. The evidence presented at trial was sufficient to establish the appellant's identity as one of the perpetrators of the present offenses.

This issue has no merit.

## CONCLUSION

After a thorough review of the record before this Court, we conclude that there is no reversible error. Accordingly, the judgment of the trial court is affirmed.