IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 26, 2002

## STATE OF TENNESSEE v. BILLY JOE PORTERFIELD

**Direct Appeal from the Circuit Court for Montgomery County**
**No. 40000362      Michael R. Jones, Judge**

---

### No. M2002-00405-CCA-R3-CD - Filed February 26, 2003

---

The Appellant, Billy Joe Porterfield, was convicted by a Montgomery County jury of aggravated burglary, especially aggravated kidnaping, especially aggravated robbery, attempted first degree murder, and two counts of aggravated rape, all arising from a single criminal episode. As a result of these convictions, Porterfield received an effective sentence of one-hundred-fifteen years imprisonment. On appeal, Porterfield argues: (1) the evidence is insufficient to support his convictions, and (2) the trial court erred in its application of enhancement factors in determining the appropriate sentences. Finding no merit to these issues, the judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Michael R. Jones, District Public Defender; Collier W. Goodlett, Assistant Public Defender, Clarksville, Tennessee, for the Appellant, Billy Joe Porterfield.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Helena Walton Yarbrough, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Helen Young, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

On April 7, 2000, the Appellant drove his girlfriend to work and, after calling in sick to his employer, proceeded to the Breakers Bar in Clarksville. He arrived at the bar at 7:00 a.m. and left around 10:30 a.m. The Appellant did not pay for the beers he drank but advised that he would return later that day and pay the tab. That same morning, the victim answered a knock at her door. When the victim leaned out of the door, the person, whom she later identified as the Appellant, grabbed

her by the throat and shoved her back into her house. After falling to the floor, the Appellant dragged the victim into the kitchen, where he obtained a pair of scissors from a drawer. The Appellant then cut the strings from an apron hanging in the kitchen, and tied the victim's hands above her head. The Appellant rifled through the victim's purse, finding only a few dollars. The victim, fearful for her safety, told the Appellant that there was some money on the dresser in her bedroom. At this point, the Appellant cut the victim's shirt with the scissors, removed her shorts and underwear, and began kissing her breast and genital areas. He then penetrated her vagina with his tongue and finger. Realizing that she was going to be raped, the victim asked the Appellant to wear a condom. After learning the Appellant did not have a condom, the victim stated that she had one in her bedroom. The Appellant then escorted the victim to the bedroom. After retrieving the condom from a plastic bag, the Appellant put the condom on and again sexually penetrated the victim. When asked what she was going to tell her husband, the victim responded, "I don't know." This angered the Appellant, and he began choking her. At this point, the victim began to fight back. She was hit twice in the face before the Appellant finally subdued her and retied her hands. The Appellant then ripped the cord from a curling iron and choked the victim until she was unconscious.

Upon regaining consciousness, the victim discovered that she was bleeding profusely. She called for help, and it was discovered that she had been stabbed twice in the neck. She was taken to the hospital and underwent emergency surgery. It was also discovered that her watch and the $300, located on the dresser, were gone. During the ordeal, the victim, while in the bedroom, recalled that she "looked at the clock at one point" and it showed "11:50." She further explained that the clock was often set five minutes fast.

The victim was able to give the police a very detailed description of the Appellant, including the clothes he was wearing and the presence of a mole/freckle under his eye. One week later, the victim positively identified the Appellant as her assailant in a line-up. In addition, two latent fingerprints matching those of the Appellant's were discovered in the bedroom on the plastic bag which had contained the condom.

The Appellant's girlfriend at the time, Cynthia Toon, testified at trial that she was unsuccessful in her attempts to reach the Appellant by phone after 10:00 that morning. She stated she attempted to call him at home at 11:34 a.m. and received no answer. However, when she called sometime after 12:00 p.m., the Appellant did answer the phone at their residence.[1] He explained that he had been cleaning the gutters on the house, but Ms. Toon testified that the gutters did not appear to have been cleaned. The Appellant also was observed that night with a large sum of money, matching the denominations taken from the victim's home.

---

[1]Toon's testimony with regard to the time she talked to the Appellant after 12:00 noon was inconsistent with her previous statement to the police and, at times, conflicting at trial. In her statement to the police, she stated that she talked to the Appellant at 12:10 p.m. At trial she testified, "[i]t was right after lunch, probably about a quarter after 12:00, something like that, ten after? I don't recall the exact time." Later, she testified that she received a message at 12:12 p.m. from her employer to call home "ASAP" and she returned the call and spoke to Billy Porterfield at their home.

A Montgomery County Grand Jury returned a six-count indictment against the Appellant on May 5, 2000, charging him with aggravated burglary, especially aggravated kidnaping, especially aggravated robbery, two counts of aggravated rape, and attempted first degree murder. After a two-day jury trial, the Appellant was convicted on all indicted offenses. Following a sentencing hearing on October 15, 2001, the trial court sentenced the Appellant to an effective one-hundred-fifteen year term in the Department of Correction. The Appellant's subsequent motion for new trial was denied on February 12, 2002, with this appeal following.

**Analysis**

## I. Sufficiency of the Evidence

On appeal, the Appellant challenges the jury's verdict finding him guilty of aggravated burglary, especially aggravated kidnaping, especially aggravated robbery, two counts of aggravated rape, and attempted first degree murder. Specifically, he contends that the proof established that he could not have committed these offenses because he was at his residence at the time of their commission. When the sufficiency of the evidence is challenged, the relevant question for an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence, are matters entrusted exclusively to the trier of fact. *State v. Gentry*, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993) (citing *Bryge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). A jury verdict for the State accredits the testimony of the State's witnesses and resolves all conflicts in favor of the State. *State v. Williams*, 657 S.W.2d 405, 410 (Tenn.1983). Moreover, guilty verdicts remove the presumption of innocence enjoyed by defendants at trial and replace it with a presumption of guilt. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this court why the evidence is insufficient to support the verdict. *State v. Freeman*, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

The Appellant does not dispute that the elements of each crime were established at trial. Rather, he asserts that the evidence establishes that he could not have been the perpetrator because he was at his residence at the time of the crimes. He relies upon the fact that: (1) the crimes were in progress at 11:50 a.m.; (2) at 12:10 p.m., he was talking to his girlfriend from their home phone; and (3) that it took Investigator Hodges twenty-three minutes to drive the 16.1 miles between the two houses; therefore, it would have been physically impossible for him to have committed the crimes. This proof, however, ignores the victim's testimony that her clock was often set five minutes fast, the uncertainty as to the time Ms. Toon talked to the Appellant at home, and Investigator Hodges'

testimony that in traveling the 16.1 miles, he drove at or below the speed limit and was stopped by every traffic light between the two residences. Like any other fact at trial, an alibi defense presents an issue of fact determinable by the jury. *Cole v. State*, 215 S.W.2d 824, 825 (Tenn. 1949); *Smith v. State*, 566 S.W.2d 553, 556 (Tenn. Crim. App. 1978).

The Appellant's argument that he was at home at the time of the crimes, at most created a conflict in a portion of the proof; however, the jury was not obligated to accept this argument over the positive identification of the Appellant by the victim and corroborating forensic evidence, especially where the proof did not establish the exact time the offenses occurred. Accordingly, we find the proof at trial more than sufficient to support the Appellant's convictions for aggravated burglary, especially aggravated kidnaping, especially aggravated robbery, attempted first degree murder, and two counts of aggravated rape.

## II. Application of Enhancement Factors

The Appellant argues that the trial court erred at sentencing by applying enhancement factors based on facts which were also used to prove the offenses or elements of the charged offenses. Specifically, the Appellant argues that the court should not have applied enhancement factor (7), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, and factor (10), that the defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114 (7) and (10). The Appellant contends that factor (10) is inapplicable because the facts necessary to establish it, *i.e.*, the use of a deadly weapon or serious bodily injury to the victim, were also necessary in establishing the elements of the crimes for which the Appellant was convicted. The Appellant also argues that the facts of the case do not support application of factor (7). We find it unnecessary to address the merits of the Appellant's arguments because review of the record at the sentencing hearing reveals that the trial court, after considering all relevant sentencing principles, did not apply these factors at sentencing:

> His actions clearly show that he had a total disregard for human life. But I'm going to - - I don't think I need to find those factors on each of these offenses even though it's clearly established. Number one, number eight, and number thirteen we believe are sufficient.

The Appellant does not contest the trial court's application of enhancing factors (1), (8), or (13),[2] nonetheless, upon *de novo* review, we find these enhancers are supported by the record at sentencing.

---

[2]As the enhancing factors were renumbered in July 2002, after the sentencing hearing in this case, the trial court actually applied factors 2 (previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range); 9 (the defendant possessed or employed a deadly weapon during the commission of the offense); and 14 (the felony was committed while on release status from a prior felony conviction).

**CONCLUSION**

Based upon the foregoing, we find the evidence more than sufficient to support the Appellant's convictions for aggravated burglary, especially aggravated kidnaping, especially aggravated robbery, attempted first degree murder, and two counts of aggravated rape. In addition, we find no error in the application of enhancement factors to the Appellant's sentence. Accordingly, the judgment of the trial court is affirmed.

_____
DAVID G. HAYES, JUDGE