IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 12, 2006 Session

## STATE OF TENNESSEE v. JAMES PATTERSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-01140      Chris Craft, Judge**

_____

**No. W2005-01416-CCA-R3-CD  - Filed January 23, 2007**

_____

James Patterson, the defendant, appeals from his jury convictions of especially aggravated robbery (Class A felony), criminal attempt of second degree murder (Class B felony), and two counts of especially aggravated kidnapping (Class A felonies).  The defendant presents two issues by contending that the evidence was insufficient to support the convictions and that the trial court erred in imposing consecutive sentences.  After review, we affirm the convictions and the sentence imposed.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Larry E. Copeland, Jr., and Joseph S. Ozment, Memphis, Tennessee, for the appellant, James Patterson.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Michelle Parks and Alanda Dwyer, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

This case involves a victim who was abducted, robbed, beaten, bound, and abandoned in the winter elements by the defendant on Christmas Eve of 2003.  The defendant was indicted on a four-count indictment charging him with especially aggravated robbery, criminal attempt of first degree murder, and two counts of especially aggravated kidnapping.  A jury returned verdicts of guilt as to especially aggravated robbery, the lesser included offense of criminal attempt of second degree murder, and two counts of especially aggravated kidnapping.  At the sentencing hearing, the trial court merged the two convictions for especially aggravated kidnapping and sentenced the defendant to concurrent twenty-two years each for especially aggravated kidnapping and especially aggravated robbery but consecutive to a ten-year sentence for criminal attempt second degree murder.  The

defendant was sentenced as a violent offender except for criminal attempt of second degree murder which was as a Range I, standard offender.

Factual Background

David Hall, the victim, testified that he went to William "Mack" Dean's house at approximately 6:00 p.m. on December 24, 2003. The victim stated that the defendant was present at Dean's house when he arrived. The victim started to leave but was stopped by the defendant who struck him and began trying to subdue him. The defendant and Dean placed handcuffs on the victim, and the defendant pulled a knitted skull cap over the victim's face. This restricted but did not completely obscure the victim's vision. The car that the victim had driven was backed to Dean's front door. The defendant attempted to force the victim into the trunk of the car. The victim's legs were hanging out of the trunk and were kicking in resistance. The defendant began slamming the trunk lid on the defendant's legs and threatened to cut them off. The victim managed to escape from the trunk but fell on the ground. The defendant then started striking the victim's head with a pipe. After four or five blows, the victim agreed to cooperate. The defendant and Dean pulled the victim from the ground, and he began resisting again. The defendant struck the victim with the pipe several more times and then was handed a pistol by Dean. The defendant placed the gun to the victim's head and said, "[D]on't make me kill you out here." The victim briefly lost consciousness and awoke as the trunk lid was closed. The defendant demanded that the victim obtain money. The victim asked to be released to obtain the money, but the defendant refused. The victim was transported in the trunk a short distance from Dean's house. The victim was able to remove the skull cap and to open the trunk lid. The trunk lid was shut again, and the defendant was informed of the victim's movements. The defendant then took the victim into the defendant's house. The victim was taken to the back of the house and placed on the floor. The defendant sat on the victim's mid-section, applied a lit cigar to the victim's eyes, and sprayed bleach in the victim's eyes. This was done repeatedly, according to the victim.

The victim said that during the struggle, his clothes had been removed and he was wearing only boxer shorts and a T-shirt. The defendant removed the handcuffs but placed duct tape around the victim's eyes, arms, and legs from the ankles over the knees. The victim was again placed in the trunk where he lost consciousness. The victim recalled the vehicle stopping and recalled being dragged into a wooded area. The victim was left there for a period he described as a "long, long time in the woods." The victim was unable to walk but began rolling toward the sound of traffic. He eventually rolled into a ditch and at approximately 9:30 a.m. on December 25, was seen by a passing motorist who reported the sighting to police. The victim stated that his hands and feet were frozen. The victim required stitches to gashes on his head and wounds on his feet. His kidneys ceased to function; his eyes required treatment and suffered residual damage. He remained in the hospital until January 8, 2004. The victim stated that approximately $175 was taken from him and that the vehicle, which belonged to his fiancé, was not recovered. The victim identified the defendant from a photo spread shown to him on January 3, 2004. At that time he only knew the defendant as "Blaze."

William "Mack" Dean's testimony substantially confirmed the victim's account of the abduction. Dean recounted that after the victim came to purchase marijuana on December 24, the defendant attacked the victim, handcuffed him, and placed a skull cap over his face. Dean stated that after much struggling and after the defendant struck the victim repeatedly with a crowbar, the victim was temporarily secured in the trunk. Dean drove the car around the corner to the defendant's house while the defendant sat on the trunk. The defendant called Jerry Pulliam, who came to the scene. At the defendant's request, Pulliam went to a store and bought duct tape. Dean and Pulliam left the scene about twenty minutes after Pulliam returned with the duct tape. Dean was not a witness to subsequent events described by the victim.

Jerry Pulliam testified that he was called by the defendant to come to the defendant's house on December 24. On Pulliam's arrival, the victim was still in the trunk of the car parked in the field at the defendant's home. Pulliam acquired duct tape for the defendant and left for home shortly after delivering it. Pulliam stated that he only got a glance of the defendant in the trunk.

Sergeant James Grigsby of the Memphis Police Department, the lead investigator on this case, could not interview the victim until January 3, 2004, due to the victim being unconscious and on a ventilator. Sergeant Grigsby executed a search warrant at the defendant's home and found a bottle of bleach and rolls of duct tape on the washing machine.

Agent Donna Nelson, a forensic specialist with the Tennessee Bureau of Investigation (TBI), testified that a blood sample taken from the defendant's door was conclusively shown by DNA tests to be that of the victim.

The defendant testified that he did not live at the residence where the duct tape, bleach, and victim's blood were found. He further stated that he "lounged" most of December 24, until his girlfriend picked him up at 5:00 p.m. They dined at a restaurant and then spent the night in a motel.

Melanie Roach, the defendant's girlfriend, testified that she spent the evening of December 24, 2003, with the defendant at a restaurant and, later, at a motel.

Based on the foregoing evidence, the jury returned guilty verdicts of especially aggravated robbery, criminal attempt of second degree murder, and two counts of especially aggravated kidnapping.

Sufficiency of the Evidence

The defendant's first issue is a challenge to the sufficiency of the evidence to support the convictions. Our standard in reviewing a sufficiency question is "whether considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." State v. Reid, 91 S.W.3d 247, 276 (Tenn. 2002). On appeal, the State is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom. State v. Smith, 24 S.W.3d 274,

279 (Tenn. 2000). A guilty verdict by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not re-weigh or re-evaluate the evidence." State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003) (citing Bland, 958 S.W.2d at 659).

The defendant argues on appeal that the evidence was insufficient because he had presented a credible alibi. However, alibi is an issue of fact to be determined by the jury as the exclusive judges of the witnesses' credibility. Smith v. State, 566 S.W.2d 553, 556 (Tenn. Crim. App. 1978).

Especially aggravated kidnapping is statutorily defined as follows:
Especially aggravated kidnapping is false imprisonment, as defined in § 39-13-302:
(1) Accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon;
(2) Where the victim was under the age of thirteen (13) at the time of the removal or confinement;
(3) Committed to hold the victim for ransom or reward, or as a shield or hostage; or
(4) Where the victim suffers serious bodily injury.
T.C.A. § 39-13-305(a)(1)-(4) (2006).

False imprisonment is knowingly removing or confining another unlawfully so as to interfere substantially with the other's liberty. T.C.A. § 39-13-302(a) (2006).

There was abundant evidence supplied that the defendant used both a metal object (described as a pipe by the victim and as a crowbar by the co-defendant, Dean) and a handgun to confine the victim and remove him while in the confines of the car trunk. As a direct result of the defendant's actions, the victim suffered serious bodily injury. The victim received cuts requiring stitches to his head and hands. The victim's kidneys ceased functioning, and he was comatose and on a ventilator during his hospitalization. The jury was warranted in finding that the defendant committed especially aggravated kidnapping by the use of a deadly weapon and the resulting serious bodily injury suffered by the defendant.

Robbery is the intentional or knowing theft of property from the person of another by violence or putting the person in fear. T.C.A. § 39-13-401(a) (2006). It becomes especially aggravated robbery if it is accomplished with a deadly weapon and the victim suffers serious bodily injury. T.C.A. § 39-13-403(a) (2006).

The victim in this case testified that approximately $175 in cash was taken from him by the defendant. We have previously concluded that the defendant utilized deadly weapons and that the victim suffered serious bodily injuries. The evidence supported the conviction for especially aggravated robbery.

The following statute defines criminal attempt:

(a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:

    (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;

    (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or

    (3) Acts with intent to complete a course of action or cause a result that would constitute the offense under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

(b) Conduct does not constitute a substantial step under subdivision (a)(3) unless the person's entire course of action is corroborative of the intent to commit the offense.

T.C.A. § 39-12-101 (2006).

Second degree murder is the knowing killing of another. T.C.A. § 39-13-210 (2006).

The jury heard evidence in this case of several acts of brutality by the defendant toward the captive victim. The victim was battered over the head numerous times, had his legs repeatedly struck by the trunk lid, and endured cigar burns and bleach applied to his eyes. Ultimately, the victim was wrapped in duct tape from his eyes down to the point that he could not walk. The defendant then left the helpless victim in some woods, clad only in boxer shorts and a T-shirt, unprotected against the December elements. A rational jury would be entitled to infer that such actions constituted an attempted second degree murder.

In summary, we conclude that sufficient evidence was presented to support the defendant's convictions beyond a reasonable doubt. The jury acted within its exclusive purview in rejecting the defendant's alibi evidence.

Consecutive Sentencing

In his final issue, the defendant alleges that the trial court erred in imposing consecutive sentences. Specifically, the defendant faults the trial court for failing to apply the factors contained in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). After review, we respectfully disagree. Accordingly, the sentences are affirmed.

This court's review of the sentence imposed by the trial court is de novo with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Pettus, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is de novo. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997). The burden is upon the

appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

A trial court may order sentences to run consecutively if the court finds by a preponderance of the evidence a number of factors including that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." T.C.A. § 40-35-115(b)(4) (2003); see also State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). Furthermore, in the event the trial court finds the defendant is a "dangerous offender," it must also determine whether the consecutive sentences: (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

The defendant was sentenced as a violent offender with a single enhancement factor of prior convictions unnecessary to establish the appropriate range. No mitigating factors were found by the court. The defendant was then sentenced to twenty-two years on the merged conviction for especially aggravated robbery and twenty-two years for the especially aggravated kidnapping. A ten-year sentence was imposed for the conviction of criminal attempt of second degree murder.

In considering whether consecutive sentences were appropriate, the trial court made findings in the following manner:

> Looking at the consecutive/concurrent sentencing factors I find that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high because of the horrible facts in this case in which he basically kneels over this man and tortures him. The facts are just horrible. Pours bleach repeatedly in his eyes, beats him repeatedly, wraps him in tape and leaves him in the woods to die. The victim in this case had to roll and crawl to the street after having been unconscious until the next day and someone found him laying in a ditch. Because of the bleach and the other things done to this man, the indignities done to this man during his robbery and kidnapping, I find that the circumstances surrounding the commission of the offense are aggravated. I also find that confinement for an extended period of time is necessary to some extent to protect society from his unwillingness to lead a productive life style.
>
> I don't see anything in his presentence report where he's – although he says he's in the music business, in the rap business or the CD business – where he's really leading a productive life. I think 44 years without parole is too much for this. I'm going to run the especially aggravated robbery concurrent with the especially aggravated kidnapping. But finding that the ten years for the criminal attempt murder second degree running consecutively to both of those, running concurrent would yield a sentence of 22 years at 100 percent and ten years at 30 percent, which would – the aggregate length of 32 years would reasonably relate to the offense for which he's

convicted.  And I think that will keep him in long enough so that when he gets out, I think society will be a lot safer from him.

The trial court's findings demonstrate that the <u>Wilkerson</u> factors were considered and followed.  The court weighed the duration of the sentence so as to reasonably relate to the severity of the offense and to protect the public from the defendant.

The defendant has failed to show that consecutive sentencing was improper.

Conclusion

After review, we conclude that sufficient evidence was presented to support the defendant's convictions beyond a reasonable doubt.  We further conclude that proper sentencing procedures were followed by the trial court in addressing required sentencing considerations.  The judgments of conviction and sentencing are affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE