King *v.* The State.

## E. T. KING *v.* THE STATE.

1. CRIMINAL LAW. *New trial.* After a trial on the merits in a criminal case, upon the plea of not guilty, the defendant is not entitled to a new trial, or to a reversal of the judgment, for any causes enumerated in section 6083 of the new Code, even if two or more of them be found to exist, and the cases of *State* v. *Davidson*, 2 Cold., 184, and *Thurston* v. *State*, 3 Cold., 115, holding otherwise, are overruled.

2. SAME. *Evidence.* Proof of the finding of postal cards, addressed to the defendant, at a place where the State sought to show that the defendant was about the time of the commission of the offense of arson, was properly admitted over the objection of the defendant, the court stating to the jury at the time, and again in his charge, that the proof would amount to nothing unless they should find that the defendant had possession of them beforehand, and left them at the place.

3. SAME. *Charge of court.* The trial court cannot be put in error for failing to explain to the jury the law as to the fabrication of evidence, when no request was preferred to him to make such a charge,

King *v.* The State.

and when it does not appear that any such point was made in the
court below, unless, indeed, the court could see that the defendant
was seriously prejudiced by the omission.

4. SAME. *Preponderance of evidence.* After verdict, and the refusal of
the trial judge to set it aside, this court will not reverse on the facts
unless the evidence preponderates against the verdict.

FROM GIBSON.

Appeal in error from the Law Court at Humboldt.
T. J. CARTHEL, J.

L. W. JONES and J. R. DEASON for King.

'W. W. WADE, T. E. HARWOOD and ATTORNEY-
GENERAL LEA for the State.

COOPER, J., delivered the opinion of the court.

Appeal in error from a judgment of conviction
for arson.

The first ground for reversal is that the record is
defective. It fails to show that the clerk or sheriff
was present at the term of the court when the indict-
ment was found, or at the term the prisoner was tried.
It does not contain a *venire facias* at the term at which
the indictment was found. It fails to show that the
indictment was returned into court by the grand jury,
etc. The learned counsel of the prisoner admits that the
Code, sec. 5242, New Code, sec. 6083, provides that
after a trial and a conviction on the merits, the pris-
oner "shall not be entitled to a new trial, or to a
reversal of the judgment, for any of the following
causes," enumerating, among others, the omissions and
defects now assigned as error. The counsel concedes

King *v.* The State.

that the statute cures any one of these defects if it stood alone, but he insists that when two or more of these defects occur together in the same record, they are fatal, citing, in support of his position, *State v. Davidson,* 2 Cold., 184, and *Thurston* v. *State,* 3 Cold., 115. And it is true that in these cases our predecessors upon this bench came to the conclusion that the statute should be construed as if it read "for any *one* of the following causes," interpolating the word "one" into the clause. For many years their successors have been unable to see the propriety of the interpolation, and have in numerous unreported cases overruled these decisions. The object of the Legislature was clearly, after a fair trial on the merits, to put an end to the delays of justice, and the escape of the convicted criminal by reason of clerical omissions and technical defects in the record. It was therefore provided by the section under consideration that the convict should not be entitled to a new trial, or to a reversal of the judgment, for any of the enumerated defects. If no one of them would be fatal to the proceedings, it is difficult to see how any number of them could be, for it would be merely the addition of ciphers, which, as our first lesson in mathematics tells us, would result in a cipher. The legislative intention clearly was that none of them, singly or in files, should stand in the way of the enforcement of the law, after the defendant had chosen to plead not guilty, and go to trial on the merits. If he desires to make a point upon such defects he must do it in advance.

It is next insisted that the court erred in admitting incompetent testimony over the objection of the defendant, and in his charge to the jury in relation to the particular testimony. The crime for which the prisoner was indicted was the burning of the prosecutor's dwelling-house during the night of the first Saturday in February, 1884. On the next morning a place was found in the woods in front of the house where a horse had been fastened, and one link in the chain of evidence tending to fix the act of the burning on the prisoner was the tracing of the tracks of that horse in the direction of the house where he was then staying. Two witnesses depose to the finding, on the morning after the fire, about where the horse stood, two postal cards addressed to the defendant, on each of which was a written communication dated in January, 1884. The defendant objected to the testimony, because there was no proof showing that the postal cards were ever in defendant's possession. The testimony was admitted, the bill of exceptions says, with "the qualification as given by the court and in his charge." The defendant afterwards introduced evidence tending to prove that the cards had been found by one of the State's witnesses before the burning, in a book which the defendant had left at a house where he had been boarding. The trial judge charged the jury upon this subject as follows: "As to the postal cards, as I said to you at the time they were read on the trial, they amount to nothing as evidence unless you are satisfied that the prisoner had received, and had possession of them

before the time it is claimed the house was burned.
But if you find the prisoner did have possession of
of said cards, and that said cards were found at the
place where a horse was hitched in the woods near
the premises of the prosecutor, then you should con-
sider such evidence as circumstantial for what it is
worth to show where the defendant was at that time.
And, after all, such evidence amounts to nothing
against the defendant unless you find from all the
evidence that he had the cards, and left them there
where the cards were found, and whether defendant
or other parties left them there, and the effect of
such evidence is for you." The testimony in relation
to the cards objected to was clearly admissible, under
the instructions of the judge given at the time, to go
for what it was worth. Like the proof in regard to
the fodder found scattered around the place where
the horse stood, fodder having also been used in mak-
ing the fire by which the house was burned, without
ffrst showing that the defendant had been in possession
of the fodder, the testimony objected to was admis-
sible, although worth nothing, to use his Honor's lan-
guage, unless the defendant was in some way connected
with the articles found. And the remarks and charge of
the judge on the subject are free from all just exception.

It is next objected that the court should have
explained to the jury the law as to the fabrication
of evidence. But his Honor was not asked to make
any such charge, and we cannot see that any point
was made in the court below on this subject. One
of the strongest links in the chain of evidence against

the defendant was, that the tracks of a man were found, on the morning after the fire, going up to the prosecutor's house, and the tracks of a man, as if running, going down the path. These tracks corresponded in size with the defendant's foot, and exactly fitted an old shoe of the defendant, which he had left the previous fall at the prosecutor's house, where he had been boarding. These facts were proved by several witnesses, one of them being the justice of the peace who had bound the prisoner over for trial. One of the defendant's witnesses had also examined these tracks in part. He testified that the tracks down the hill were only heel tracks, there being no pressure of the front part of the foot at all. He adds: "When we put the shoe in the track, it made me think this was the same shoe. The heel tracks could have been made by a man pressing the old shoe down on the ground." This testimony, together with the witness' statement that he saw only one heel track on each side of the branch, although he looked for the other foot, might lay the foundation for a charge of fabrication of evidence by the prosecutor. It would not be worth much in the face of the testimony of the other witnesses, but the defendant's counsel might have made the most of it (as probably he did) in the court below, and might have had a charge upon it if he had asked for it. The trial judge can not be put in error upon such a matter unless it appear that his attention was called to it, or unless we can clearly see that the defendant was seriously prejudiced by the omission.

The defendant's counsel thinks that the verdict is not sustained by the evidence. But the jury and the trial judge have thought otherwise. The burden is thus thrown upon the defendant to satisfy us that the verdict is erroneous, that is, that the evidence preponderates against the verdict. The benefit of a doubt must be obtained from the jury. A careful examination of the record satisfies us that the weight of evidence is with the verdict.

There is nothing in the so-called newly discovered evidence to authorize a new trial.

Judgment affirmed.