Cole *et al. v.* State.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

CRAWFORD & HURD and O'NEIL LEE, all of Newport, for plaintiffs in error.

NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE GAILOR delivered the opinion of the Court.

In the Circuit Court of Cocke County, the defendants, Rex Cole, Bruce Clift and Sanford Bugg were convicted of robbery and sentenced to five years in the penitentiary for the offense. They have appealed and assigned errors.

On the night of October 20, 1947, the Prosecutor Johnson, who is a cattle dealer and who was at the time carrying about $300 in paper money on his person, was driven to a beer tavern and dance hall by a taxi driver named Webb, who remained drinking with his fare until a short

time before the robbery occurred. The beer tavern was operated by defendant Clift.

After Johnson had bought and paid for a number of drinks, and in so doing showed those present his wallet and the fact that it was well filled with money, Clift, who had previously been seen to whisper and confer with the other two defendants, Cole and Bugg, became suddenly angered at Johnson and ordered him out of the house. Johnson went out and sat in the front seat of the taxicab where presently Cole and Bugg joined him. These defendants then drove Johnson some distance down the road, at the point of a pistol robbed him of his wallet and put him out of the cab. After throwing the empty wallet away at the scene of the robbery, they brought the money back to Clift for a division. The empty wallet was later found and introduced in evidence. Johnson testified that after the prosecution was started, Clift came to him and tried to settle the case and stop criminal proceedings.

A few minutes after the robbery, and after Cole and Bugg had returned to Clift's place, Webb was called into a small private room there, and found Clift, Bugg and Cole gathered together. Bugg threw down on the table a large roll of bills which Clift picked up and from which Clift took $40 which he gave to Webb "to keep his mouth shut."

■ For their defense, Clift and Bugg, while admitting that they saw Johnson at Clift's place on the night of October 20th, denied that they participated in any robbery, and Bugg testified that Webb committed the robbery himself. Defendant Cole denies that he was at Clift's place on that night and testified to an alibi in which he is supported by his wife. Her testimony was

greatly weakened by discrepancies in statements made on direct and cross-examination, and by incredible details which she related about an alleged sickness of her husband. Study of her entire testimony leaves doubt as to whether the alleged sickness and robbery were contemporaneous, or whether the sickness was after or before the robbery. Evidence of the alibi and its corroboration was to be received with caution, *Odeneal* v. *State*, 128 Tenn. 60, 157 S. W. 419, and to be weighed and determined by the jury like any other evidence, *Warren* v. *State*, 178 Tenn. 157, 160, 156 S. W. (2d) 416.

It is clear from our summary of the evidence and the testimony of the various witnesses that sharp issues of fact were raised by the witnesses testifying for the State and those testifying for the defendants. The evidence did not preponderate in favor of the innocence of the defendants, and the weight of the testimony and the credibility of the various witnesses was exclusively for the jury and settled by the verdict. *Ferguson* v. *State*, 138 Tenn. 106, 196 S. W. 140; *Christian* v. *State*, 184 Tenn. 163, 197 S. W. (2d) 797. After their conviction, the defendants are here under a presumption of guilt and we find no preponderance in favor of their innocence. The assignments of error on the sufficiency of the evidence are overruled.

By the next assignment of error, it is insisted that there is a fatal variance between the allegations of the indictment and the proof, in that the indictment charges that the stolen money was the property of Johnson, while the proof shows that it was the property of his brother-in-law, who was his partner in the cattle business. The established facts are these: The brother-in-law furnished the money; Johnson bought the cattle; and they divided

the profits accruing from the re-sale of the cattle. Under these undisputed facts, Johnson was not only the agent and bailee of his brother-in-law, but the agency was in a non-technical sense coupled with a proprietary interest, since Johnson would ultimately share in the profits from the resale of the cattle which the brother-in-law's money bought. We find no variance that was material or prejudicial. *Renfro* v. *State*, 65 Tenn. 517, 520; *Lowry* v. *State*, 113 Tenn. 220, 223, 81 S. W. 373.

The fourth assignment of error complains that the Attorney General cross-examined Bugg as to a purported confession of Cole which had been excluded by the Judge. Objection was made to the cross-examination at the time, and the Trial Judge sustained the objection and explicitly directed the jury not to consider the objectionable evidence. There was, therefore, no prejudice to the defendants and no error.

The fifth assignment complains also of certain parts of the cross-examination of Bugg. It would uselessly prolong this opinion to set the testimony out in full. It is sufficient in disposing of the assignment to say that the Judge very carefully restricted the cross-examination so that the witness answered no questions about his excluded confession, and as the record stands, there was no prejudicial error committed against the interests of the defendants by the questions as they were answered after the Trial Judge had restricted and directed the proper course of the examination.

The sufficiency of the charge of the Court to the jury is assailed in the 6th assignment on the ground that he failed to instruct the jury that defendants could not be convicted on the uncorroborated testimony of an accomplice, and it is insisted that Webb was such an ac-

complice. This assignment could affect only the conviction of Clift, since the convictions of Cole and Bugg were supported by testimony of the Prosecutor, as well as by that of Webb. But we find no merit in the assignment, however it be limited.

The State insists that since Webb was guilty, if at all, of receiving stolen goods and defendants were convicted of robbery, that Webb was not an accomplice, but a principal in the commission of a separate crime. *Harris* v. *State*, 75 Tenn. 124, 127; *Collins* v. *State*, 169 Tenn. 393, 88 S. W. (2d) 452.

On the other hand, defendants insist that by furnishing the taxicab and otherwise aiding and abetting the defendants, that Webb was guilty as a principal and accomplice in the robbery. This was in accord with the testimony of Clift and Bugg, and of their defense that Webb had committed the robbery and they had had nothing to do with it. It is not for us on this record, to say what crime Webb committed, or whether he was guilty of any crime at all. With the question in doubt and with the defense as shown, it was clearly obligatory on the defendants to prepare and tender a special request setting forth their theory. This was not done and no special request was tendered. In the absence of action by the Trial Judge on a special request in such a case, there is no error. *King* v. *State*, 83 Tenn. 51, 56; *Phelan* v. *State*, 114 Tenn. 483, 507, 88 S. W. 1040; *Powers* v. *State*, 117 Tenn. 363, 371, 97 S. W. 815; *Smith* v. *State*, 159 Tenn. 674, 688, 21 S. W. (2d) 400; *Gentry* v. *State*, 184 Tenn. 299, 303, 198 S. W. (2d) 643.

Finally, it is insisted that defendants were denied a fair trial because the jury was not kept separate and apart during the trial, but were allowed to separate and

remain unguarded during one of the nights of the trial after their selection. Briefly, the facts were these. No accommodation was available at the local hotel, so the jury, attended by only one officer, was taken in two taxicabs to a tourist court, and there part of the jury slept in the same room as the officer, and the other members slept in an adjoining room. There is no evidence nor suggestion that any outside person did in fact influence or attempt to influence any member of the jury. On the hearing on motion for a new trial 11 of the jurors, who were able to testify what happened to all 12 members of the jury, testified positively that no outsider had discussed the trial with any member of the jury, and that no improper outside influence had been attempted or exerted.

When it thus affirmatively and conclusively appears that the defendants suffered no prejudice by the mere technical separation of the jury as under the necessities of the case here, the enforcement of the rule is unreasonable and will not be required. ''The purity of jury trials is now made to depend not on form, but substance.'' *Stone* v. *State*, 23 Tenn. 27, 38. It is true that defendants raised at presumption against a fair trial when they showed the separation of the jury, but the State overcame the presumption by the positive testimony of the 11 jurors, and the corroborating testimony of the officer, and by the circumstances of the separation. *Odle* v. *State*, 65 Tenn. 159, page 161, Rule 2.

Our cases, as well as those from other jurisdictions, make it clear that it is not the mere physical separation that is frowned upon, but it is the opportunity thus afforded the jury of mingling with outsiders while not under the eyes of the attending officer. There is no proof

in the present record that any outsiders were in contact with the jury while any of its members were unattended by the officer. In such case there was no prejudice to the rights of the defendants and no error. *Hines* v. *State,* 27 Tenn. 597; *Cartwright* v. *State,* 80 Tenn. 620, 624; *Kennon* v. *State,* 181 Tenn. 415, 181 S. W. (2d) 364.

All assignments of error are overruled and the judgment against each of the defendants is affirmed.

All concur.