# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JANUARY 1999 SESSION



**FILED**

**February 3, 1999**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | **NO. 02C01-9710-CR-00389** |
| Appellee, | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ARTHUR T. BENNETT,** |
| **MARCUS POLK,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | (Attempted First Degree Murder, |
| | ) | Aggravated Assault, Reckless |
| | ) | Aggravated Assault) |

**FOR THE APPELLANT:**

**COLEMAN W. GARRETT**
200 Jefferson Ave, Suite 850
Memphis, TN 38103-2328

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General and Reporter

**PETER M. COUGHLAN**
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 Fifth Avenue North
Nashville, TN 37243-0493

**WILLIAM L. GIBBONS**
District Attorney General

**PAUL F. GOODMAN**
Assistant District Attorney General
201 Poplar Ave, Suite 301
Memphis, TN 38103-1947

**OPINION FILED:** _____

**AFFIRMED**

**JOE G. RILEY,**
**JUDGE**

**OPINION**

The defendant, Marcus Polk, appeals as of right his convictions by a Shelby County jury of two counts of attempted first degree murder, one count of aggravated assault, and one count of reckless aggravated assault. The defendant was sentenced to terms of twenty-five (25) and fifteen (15) years for the attempted murder convictions, and six (6) years for aggravated assault, all consecutive. The trial court also ordered a three (3) year sentence for reckless aggravated assault served concurrently to the aggravated assault conviction, for an effective sentence of forty-six (46) years. On appeal, the defendant contends the evidence adduced at trial was insufficient to support the guilty verdicts, and the trial court abused its discretion in ordering consecutive sentences. The judgment of the trial court is AFFIRMED.

**I.**

Tamera Townsend and Kenneth Matthews lived together in an apartment with Townsend's children. Matthews had fathered Townsend's two youngest children. Townsend and Matthews subsequently ended their relationship, and Matthews moved out of the apartment. The defendant and Tamera Townsend then began a relationship, and the defendant moved into Townsend's apartment.

Townsend ended her relationship with the defendant after several months. Two nights after the defendant moved out of Townsend's apartment, Matthews spent the night there. The defendant arrived at the apartment the following morning and knocked on the door. Townsend refused to answer the door, fearing a confrontation between Matthews and the defendant. Townsend testified that the defendant remained outside her apartment for several hours, leaving sometime in the afternoon.

2

Townsend's mother arrived after the defendant left the apartment. Townsend, Matthews, her mother and her children then left the apartment for several hours. When they returned that night, Townsend discovered her apartment had been vandalized. Television screens were shattered, dresser drawers were emptied, a leather couch was slashed, and a VCR was missing. Townsend called police from a neighbor's apartment, and officers responded to make a report. Townsend informed the officers she suspected the defendant of causing the damage.

The police left at approximately 7:30 p.m. on February 16, 1996. Shortly thereafter, Townsend, Matthews and two neighbors, Wayne Rooks and Latrina Askew, gathered in Townsend's apartment. Standing at her front door, Townsend observed the defendant standing at the entrance to her apartment complex. She exclaimed, "[t]here go Mark," and Matthews rushed to the door. When Matthews appeared at the door, the defendant began to fire shots into the apartment. Everyone in the apartment dropped to the floor. When the shots stopped, Wayne Rooks stood to leave and was shot in the head. Rooks permanently lost his vision and sense of smell as a result of the injury.

Latrina Askew testified that when Townsend shouted, "[t]here go Mark," Askew turned and recognized the defendant standing in a dimly lit area of the apartment complex. Although she could not see him clearly, she did recognize the defendant, and identified him as the person who fired the shots into Townsend's apartment. Kenneth Matthew's testimony was essentially the same as Townsend's and Askew's. Wayne Rooks testified that he did not see who shot him.

The defendant's mother, Dorothy Polk Davenport, testified for the defense as an alibi witness. She testified that the defendant was at home with a

3

female friend from approximately 6:30 p.m. to 8:00 or 8:30 p.m. on the evening of the shooting.

The defendant testified that he was not the person who fired the shots and stated he was at home with his girlfriend at the time of the shooting.

## II.

The defendant first contends that the evidence is insufficient to support his convictions. Specifically, he argues that the eyewitness testimony offered by Askew and Matthews was unduly influenced by Townsend's statement, and no rational trier of fact could have convicted him based upon the eyewitness testimony. The defendant further contends that the jury failed to give proper weight to his alibi evidence.

In determining the sufficiency of the evidence, this Court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). To the contrary, this Court is required to afford the state the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App.1995).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. Id. In State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973), the Tennessee Supreme Court stated, "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

4

Like any other fact at trial, an alibi defense presents an issue of fact determinable by the jury. Cole v. State, 187 Tenn. 459, 215 S.W.2d 824 (Tenn. 1948); Smith v. State, 566 S.W.2d 553, 556 (Tenn. Crim. App. 1978). Likewise, the credibility of eyewitness testimony identifying the accused as the perpetrator of the criminal offense for which he stands trial is a question of fact for the determination of the jury upon consideration of all competent proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993).

The jury heard the testimony of three witnesses who identified the defendant as the person who fired shots into Townsend's apartment. They also heard the defendant's alibi testimony. The jury chose to believe the State's witnesses, as was its prerogative.

This issue is without merit.

**III.**

The defendant next contends the trial court abused its discretion in ordering consecutive sentences. The defendant argues that since the offenses arose out of a single act, consecutive sentencing was not warranted.

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

5

Consecutive sentencing is governed by Tenn. Code Ann. § 40-35-115. The trial court may order consecutive sentencing if it finds that one or more of the required statutory criteria exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). Further, the court is required to determine whether the consecutive sentences (1) are reasonably related to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

We reject defendant's argument that all offenses arising out of a single act of shooting mandate concurrent sentences. *See* Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). As previously stated, consecutive sentencing is now governed by Tenn. Code Ann. § 40-35-115.

The trial court found the defendant to be "a dangerous [offender] ... you are a danger to society in regard to human life." *See* Tenn. Code Ann. § 40-35-115 (b)(4). Shooting into an occupied apartment, the defendant endangered the lives of at least four (4) people. Further, after a brief respite from the initial shots, the defendant shot Wayne Rooks as he attempted to flee. The trial court was justified in its determination that the defendant is a dangerous offender within the meaning of Tenn. Code Ann. § 40-35-115.

The trial court failed to explicitly mention the Wilkerson factors in finding consecutive sentences appropriate. However, under our power of *de novo* review, we find the consecutive sentences are necessary to protect the public from further criminal conduct by the defendant, are reasonably related to the severity of the offenses, and are congruent with general sentencing principles. In short, we find the defendant was properly sentenced to consecutive terms.

This issue is without merit.

6

Accordingly, the judgment of the trial court is AFFIRMED.

_____
**JOE G. RILEY, JUDGE**

**CONCUR:**

_____
**DAVID G. HAYES, JUDGE**

_____
**JOHN EVERETT WILLIAMS, JUDGE**