IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs September 7, 2011

## STATE OF TENNESSEE v. RODREIGORS JEFFERSON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-05087     Chris Craft, Judge**

_____

**No. W2010-01602-CCA-R3-CD  - Filed October 17, 2011**

_____

A Shelby County jury convicted Rodreigors Jefferson ("the Defendant") of aggravated robbery.  He was sentenced to eighteen years, six months.  On appeal, the Defendant argues that the trial court erred in admitting certain evidence, that the evidence was insufficient to sustain his conviction, and that the trial court erred in applying a sentencing enhancement factor.  Following a careful review, we affirm the Defendant's conviction and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

James P. DeRossitt IV (on appeal) and Gregg Carman (at trial), Memphis, Tennessee, for the appellant, Rodreigors Jefferson.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Jennifer S. Nichols, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual & Procedural Background**

This case arises from the December 16, 2007 armed robbery of Christopher Johnson ("the victim").  A Shelby County Grand Jury indicted the Defendant for aggravated robbery on August 5, 2008.  Following a trial in the Shelby County Criminal Court, a jury convicted the Defendant of the indicted offense on March 31, 2010.  The trial court sentenced him on May 21, 2010, as a Range II multiple offender, to eighteen years and six months.

At approximately 3:45 a.m. on Sunday, December 16, 2007, the victim, a self-employed truck driver, was fueling his semi at a Circle K gas station located at the intersection of Lamar Avenue and Shelby Drive in Memphis. As he was putting the fuel nozzle in the passenger-side tank of his truck, the victim saw a red Dodge Dakota pickup truck enter the parking lot, circle around, and pull into the adjacent bay next to his truck. The victim walked around to the driver's side of his semi. He testified that, "[a]s I opened up my door to get in and sit down, that's when [the Defendant] jumped out of the red Dakota on the passenger side with a gun in his right hand." The victim began to run. When he realized the Defendant was chasing him, he stopped out of fear that he would be shot. The victim turned to face the Defendant, at which point the Defendant told him, "Drop it off, bitch." In response, the victim handed the Defendant his wallet, which contained six hundred dollars and three credit cards. The Defendant took the wallet, ran back to the Dodge Dakota, got in the passenger-side door, and rode away.

The victim called the police. When they arrived he described his assailant as a black male, mid- to late-twenties, approximately 5'7" tall, 135-140 pounds, with no facial hair, and eyebrows with a distinctive arch. The victim told police that his assailant was wearing a two-tone, gray hooded sweatshirt, and was carrying a gray nine-millimeter handgun. The victim did not notice any tattoos on his assailant, and he testified to believing the assailant was either bald or wore his hair "short to the head" but could not be certain because the sweatshirt's hood was over the assailant's head. As the Dodge Dakota drove away, the victim made out four possible license plate numbers, which he provided to the police. Police officers were unable to locate the truck that night. Later, the victim gave the police one additional possible license plate number.

Officer Joseph Poindexter, a Memphis City police officer, began to investigate the robbery. He testified that the license plate numbers given by the victim became part of his investigation; however, they did not identically match any vehicle fitting the victim's description. On cross-examination, the following exchange occurred between defense counsel and Officer Poindexter:

> Q: [Y]ou also learned that there were some different tag numbers for you to at least investigate, correct?
> A: Yes, sir.
> Q: Now, you looked up those tag numbers, right?
> A: Yes, sir
> Q: None of them came back registered to a red Dodge Dakota, did they?
> A: No, sir.

Q: None of them came back registered to [the Defendant] for another vehicle, did they?
A: No, sir.
Q: Did you run the tags just in Tennessee, or did you run Mississippi and Arkansas potential tag numbers?
A: We did the inlets for Mississippi and Arkansas, also.
Q: So none of those came back registered to a red Dodge Dakota?
A: No, sir.
Q: None of them came back registered to [the Defendant]?
A: No, sir.
Q: During your investigation and looking up tag numbers, did you find out how many red Dodge Dakotas are in Shelby County?
A: No, sir.
Q: Did you find out how many are in the state of Tennessee?
A: No, sir.
Q: Did you find out how many were in the state of Mississippi?
A: No, sir.
Q: Or Arkansas?
A: No, sir.
Q: So you have no idea how many red Dodge Dakotas may be out traveling the streets at any point in time; is that fair to say?
A: Yes, sir.

Soon after this exchange, out of the presence of the jury, the State asserted that the Defendant had "opened the door" to further explanatory testimony by Officer Poindexter. In an offer of proof, Officer Poindexter testified that one of the license plate numbers given by the victim nearly matched those on a red Dodge Dakota pickup truck that had earlier been reported stolen. According to Officer Poindexter, by transposing one digit of one of the license plate numbers given by the victim, he was able to match it to the reportedly stolen Dodge Dakota. After weighing the probative and prejudicial value of Officer Poindexter's testimony, the trial court ruled from the bench as follows:

I'm going to allow [the State] to ask [Officer Poindexter] about looking at the tag numbers [the victim] gave.

I'm going to allow [Officer Poindexter] to say that he tracked it to a truck owned by another person, without

-3-

mentioning that person's name, a lady, and that she had reported it stolen.

We're not going to talk about when it might have been stolen, under the circumstances, we're not going to talk about carjacking, just that it had been reported stolen. And that statement is not going to be used to offer the truth that it was stolen but just that it was – it had been reported stolen, and that was the end of that . . . but we can't get out that this was . . . a carjacking, a robbery, the day before or anything that would relate to this Defendant.

Nothing in the Defendant's statement that's in evidence relates to his owning the car, driving the car, just that he had been in the car, and I've got to balance the right of the State to put its proof in proper context with the Defendant's right not to be prejudiced by any bad acts . . . .

[The Defendant] was never charged . . . with taking the car. It has nothing to do with him as far as when and if the car was stolen. But that way, the State will be allowed to get in the fact that [Officer Poindexter] did follow up on it, but we cannot point at the Defendant as committing a crime or being with someone who committed a crime because that would show [Tennessee Rule of Evidence] 404(b) problems.

Thus, Officer Poindexter was allowed to testify to the jury that he checked the license plate numbers given by the victim, and that, by transposing one number, he was able to match tag number 871-GDG to a red Dodge Dakota pickup truck that had been reported stolen. The trial court then provided the following curative instruction to the jury:

The Court: This Defendant, Mr. Jefferson was never charged with stealing this car.

It has nothing to do with him or this case other than the allegation, by the State's theory, that this car may have been used in a crime.

So I'm allowing you to hear that evidence so that you will – if you consider it truthful – see what this officer did in

-4-

following up on his investigation. But I do that at the risk of your following these instructions, that you cannot use that at all against [the Defendant].

If there were another trial – if that truck were, in fact, stolen, and there were another trial with someone else who was developed as a suspect for stealing it, we would get into all that kind of stuff, but that has absolutely nothing to do with this trial.

It's only being offered to show what this officer did in pursuing that lead and coming up against that blind-out. Does everybody understand that?

Jury Members: (Affirmative responses.)

The Court: So can y'all all promise me you cannot – the fact that a truck was or was not stolen, can y'all promise me you will not hold that at all against this Defendant, who was never held responsible or even charged with anything? Can y'all do that?

Jury Members: (Affirmative responses.)

Officer Poindexter's investigation initially developed Onterio Knox, a/k/a "Tokyo," as a suspect in the robbery. On December 22, 2007, Officer Poindexter presented the victim with a photographic lineup containing Knox's photograph. The victim was unable to identify anyone in this lineup as his assailant. Officer Poindexter subsequently developed the Defendant as a suspect, and, on February 19, 2008, presented the victim with a second photographic lineup, which included a photograph of the Defendant. The victim identified the Defendant as the man who robbed him.

Police interviewed the Defendant on February 28, 2008. During the interview, he denied any role in robbing the victim; however, he did provide police with a written statement in which, as relevant here, he admitted to being in the Dodge Dakota in question with Knox on the day after the robbery, December 17, 2007.

At trial, the State sought to admit into evidence the Defendant's statement to police. Defense counsel objected, arguing that the Defendant's statement was unfairly prejudicial. See Tenn. R. Evid. 404(b). Following a lengthy jury-out hearing in which the trial court, defense counsel, and the prosecutor consulted to redact the Defendant's statement, the following portion of the statement was admitted into evidence:

Q: What type of vehicle were you in and where were you parked?
A: I'm not familiar with the name of the street but we were in the red Dodge Dakota you were talking about.
Q: Who was with you in the red Dodge Dakota[?]
A: Me, Marrinno Stewart and Tokyo[.] I don't know his last name but I used to date Tawana Towers who is Marrinno's cousin and Tokyo's aunt.
Q: When the red Dodge Dakota was parked[,] who stayed in it and who got out?
A: Me and Tokyo stayed in the truck. Marrinno was driving and when he got out Tokyo slid over to the driver's seat and I was in the passenger seat.

Q: Describe what happened.
A: Marinno picked me up between 7:00 and 8:00 a.m. in the red Dodge Dakota that Monday [i.e., December 17, 2007]. We ended up in the "SUB"[1] some kind of way[.] [I]t wasn't on our agenda though.

The trial court determined that the above redacted statement was admissible under Tennessee Rule of Evidence 404(b) because it was "offered to prove [the Defendant's] familiarity with an undesignated red Dodge Dakota truck at the time surrounding the case that we have on trial, not for any propensities to commit other offenses." The redacted statement delivered to the jury consisted of four pages. The first page, titled "Witness Statement," contained the Defendant's biographical information, contact information, details regarding the date, time, and place of the police interview, a statement advising the Defendant of his *Miranda* rights, and the Defendant's affirmative responses that he understood his rights and wished to make a statement. The second and third pages consisted of the excerpted portions above, and, spread over two pages, contained a considerable amount of blank "white space" where other portions of his statement had been redacted. Additionally, certain sentences within the statement contained gaps or spaces where redaction occurred. Consequently, the trial court gave a curative instruction to the jury in which it explained that the redactions had been made in accordance with the Rules of Evidence, that the redactions did not concern a crime that the Defendant was charged with, and that the jury should disregard the redactions and use the statement for its intended purpose only.

---

[1]Officer Poindexter testified that the "SUB" is the given name of a neighborhood in Memphis that is "a few miles east" of the Circle K gas station where the robbery occurred.

At the close of the State's case-in-chief, the Defendant orally moved for a judgment of acquittal, which was denied. In his proof, the Defendant offered the testimony of two of his aunts, Daisy Boyd and Emma Johnson. Both aunts testified that the Defendant was 5'5", had tattoos on the back of both hands, and that, at the time of the robbery, he was thirty-one years old, had facial hair, and wore his hair about an inch long in a style called "twisters." Both aunts also testified as alibi witnesses. According to their testimony, at the time of the robbery, the Defendant lived with Ms. Boyd and Ms. Johnson at Ms. Johnson's home in Memphis. Both testified that in the early morning hours of December 16, 2007, the Defendant was asleep at Ms. Johnson's home. They testified that they remembered that specific night because it was the night of a birthday party for another of the Defendant's aunts, Betty Johnson. Each testified that the Defendant attended the birthday party and went to sleep that night without leaving the house. Although neither alibi witness testified to seeing the Defendant asleep in his bed at the time that the robbery occurred, each testified that the Defendant was at the house when they awoke in the morning.

At the conclusion of the trial, the jury convicted the Defendant of aggravated robbery, a Class B felony. The trial court conducted a sentencing hearing on May 21, 2010. It found the Defendant to be a Range II multiple offender, which carries a sentencing range of twelve to twenty years on a Class B felony. The trial court found no applicable mitigating factors, but found that the Defendant's lengthy prior criminal history and his role as a leader in the robbery were appropriate enhancement factors.[2] Upon consideration of these and other appropriate sentencing factors, the trial court sentenced the Defendant to eighteen years and six months. The Defendant filed a motion styled "Motion for Judgment of Acquittal, or in the Alternative, Motion for New Trial," which was denied by order entered June 18, 2010. The Defendant timely appealed.

---

[2]The Sentencing Act provides, in relevant part, as follows:

If appropriate for the offense and if not already an essential element of the offense, the court shall consider, but is not bound by, the following advisory factors in determining whether to enhance a defendant's sentence:

(1) The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range;

(2) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors.

Tenn. Code Ann. § 40-35-114(1)-(2) (Supp. 2007).

## II. Issues Presented

The Defendant raises the following issues for review, as restated from his brief:

(1) Whether the trial court erred by allowing a redacted version of Defendant's statement to police to be introduced at trial?

(2) Whether the trial court erred by allowing Officer Poindexter to testify concerning the transposed license plate numbers reported by the victim and that a Dodge Dakota with similar tags had been reported stolen?

(3) Whether the trial court erred by denying the Defendant's motion for judgment of acquittal at the conclusion of the State's case-in-chief?

(4) Whether the trial court erred by applying as an enhancement factor that the Defendant was a leader in the commission of an offense involving two or more criminal actors?

## III. Analysis
### *1. Admissibility of State's Evidence*

The Defendant contends on appeal that certain evidence was improperly admitted at trial. Specifically, the Defendant argues that the following evidence was unfairly prejudicial and should not have been admitted: (1) his redacted statement to police in which he admitted to being in a red Dodge Dakota on the day after the robbery; and (2) Officer Poindexter's testimony concerning the license plate numbers provided by the victim, which nearly matched a red Dodge Dakota pickup truck that had been reported stolen.

### a. Standard of Review

Tennessee Rule of Evidence 404(b) prohibits evidence of other crimes, wrongs, or acts that are offered "to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Such evidence may be admissible, however, for other purposes, such as to show identity, motive, intent, common scheme or plan, or absence of mistake Id.; State v. Rickman, 876 S.W.2d 824, 827 (Tenn. 1994) (citing Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980)). Rule 404(b) sets forth the specific procedure the trial court must follow to determine the admissibility of proffered evidence:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

Where the trial court has substantially complied with the procedural requirements of Rule 404(b), then we review the trial court's evidentiary ruling under an abuse of discretion standard. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997). An appellate court will find an abuse of discretion "only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." State v. Banks, 271 S.W.3d 90, 116 (Tenn. 2008) (citing Konvalinka v. Chattanooga–Hamilton Cnty. Hosp. Auth., 249 S.W.3d 346, 358 (Tenn. 2008)). Here, the trial court meticulously complied with the procedural requirements of Rule 404(b), a conclusion which the Defendant does not contest on appeal. Thus, we review the trial court's decision on these evidentiary issues under an abuse of discretion standard.

b. The Defendant's Redacted Statement to Police

As noted above, during the police investigation, the Defendant provided a written statement, in which, as relevant here, he admitted to being in the stolen truck on the day after the robbery of the victim. At trial, the State attempted to introduce the written statement as circumstantial evidence linking the Defendant to the vehicle used in the robbery. The trial court determined that the redacted statement, excerpted above, was relevant to a material issue other than conduct conforming with a character trait because it was "offered to prove [the Defendant's] familiarity with an undesignated red Dodge Dakota truck at the time surrounding the case that we have on trial, not for any propensities to commit other offenses."

-9-

On appeal, the Defendant appears to argue both that the substance of the redacted statement was unfairly prejudicial under the balancing procedure set forth by Tennessee Rule of Evidence 404(b), and that the statement was so heavily redacted that it created an unfairly prejudicial impression with the jury that something was amiss. To this latter argument, the Defendant asserts in his brief that:

> It would be difficult for any reasonable jury *not* to conclude that other 'bad acts' of [the] [D]efendant are being concealed by such redactions. Such speculations by the jury carry a very high likelihood of leading to a conviction based on unfairly prejudicial and ultimately irrelevant suggestions that the [Defendant] may have committed or been involved in other crimes.

After reviewing the record, we conclude that the trial court did not abuse its discretion in admitting the redacted statement. Preliminarily, we note that the trial court clearly complied with the procedural requirements of Rule 404(b). The court correctly recognized that evidence relating to the stolen truck could unfairly prejudice the Defendant and carefully weighed this risk against the statement's probative value. We agree with the trial court that the portions of the statement that were admitted were not unfairly prejudicial. The trial court carefully redacted every part of the statement that could be read to suggest that the Defendant participated in stealing the Dodge Dakota.

We also agree with the State that any confusion or speculation by the jury regarding omissions or gaps in the statement in the form of "white space" was cured by the trial court's instruction. A jury is presumed to have obeyed a trial court's curative instruction. State v. Reid, 164 S.W.3d, 286, 323 (Tenn. 2005) (citing State v. Shaw, 37 S.W.3d 900, 904 (Tenn. 2001)). Here, the trial court's instruction specifically and adequately instructed the jury that the matters that had been redacted were irrelevant to the offense with which the Defendant was charged, that they had been redacted in accordance with the Rules of Evidence, and that the jury was to disregard the redactions and use the statement only for its intended purpose. This curative instruction was sufficient to assuage any concerns the jury may have had regarding omissions or "white space" in the Defendant's statement.[3] Accordingly, we conclude that the Defendant is not entitled to relief on this issue.

---

[3]We note that the Defendant has not advanced any appellate argument on this issue under Tennessee Rule of Evidence 403.

The Defendant also argues that the trial court erred when it permitted Officer Poindexter to testify that the license plate numbers provided by the victim nearly matched a Dodge Dakota that had been reported stolen. Similar to his argument regarding the redacted statement, the Defendant contends that Officer Poindexter's testimony created an unfairly prejudicial inference that the Defendant was involved in stealing the truck. The State contends that the Defendant "opened the door" to Officer Poindexter's testimony by asking him on cross-examination whether any of the license plate numbers provided by the victim were registered to the Defendant or to a red Dodge Dakota pickup truck.

The doctrine of curative admissibility "permits the State, on redirect, to question the witness to clarify or explain the matters brought out during, or to remove or correct unfavorable inferences left by, the previous cross-examination." State v. Land, 34 S.W.3d 516, 531 (Tenn. Crim. App. 2000) (citing People v. Manning, 695 N.E.2d 423, 433 (Ill. 1998)). The doctrine of curative admissibility allows the State to admit otherwise inadmissible evidence "in order to explain or counteract a negative inference" raised by an issue that a defendant injects into the case. Id. (citations omitted); see also Neil P. Cohen, Sarah Y. Sheppeard & Donald F. Paine, TENNESSEE LAW OF EVIDENCE § 6.11[6][a] (5th ed. 2005). The doctrine is designed to guarantee fairness. Land, 34 S.W.3d at 531. Thus, it prevents a party from manipulating the Rules of Evidence so as to gain exclusion of certain evidence and then "extracting selected pieces of this evidence for his own advantage, without the Government being able to place them in their proper context." Id. (quoting Lampkins v. United States, 515 A.2d 428, 431 (D.C. 1986)). On the other hand, the doctrine of curative admissibility also limits the introduction of inadmissible evidence in that it may only be used to "shield a party from adverse inferences and is not to be converted into a doctrine for injecting prejudice." Id. (citing Manning, 695 N.E.2d at 434).

In the present case, Officer Poindexter testified on direct examination, without objection, that the victim gave him several possible license plate numbers that became part of his investigation. Then, on cross-examination, defense counsel questioned Officer Poindexter as to whether any of the potential license plate numbers given by the victim matched a red Dodge Dakota or a vehicle registered to the Defendant. The defense clearly was trying to cast doubt on both the completeness of the police investigation and the veracity of the victim's visual identification of the getaway vehicle. In a subsequent jury-out hearing, when the State sought to introduce this evidence because the Defendant had "opened the door," Officer Poindexter testified that by transposing one number, he was able to match one of the license plate numbers provided by the victim to a red Dodge Dakota that had been reported stolen. After weighing the probative value of this evidence against its prejudicial effect, as required by Rule 404(b), the trial court allowed Officer Poindexter's testimony to

this effect, but did not allow him to testify that the Defendant was involved in stealing the truck. The trial court then gave the curative instruction to the jury excerpted above.

After a thorough review of the record, we conclude that the trial court did not abuse its discretion by allowing Officer Poindexter to testify that in performing his investigation, he ran the license plate numbers provided by the victim and that, by transposing a number, he was able to match those numbers to the tag number of a reportedly stolen Dodge Dakota. Nothing in Officer Poindexter's testimony implicated the Defendant in the separate crime of stealing the Dodge Dakota. Officer Poindexter's testimony simply explained a negative inference that had been raised on cross-examination by the Defendant. His testimony was properly introduced under the doctrine of curative admissibility. Without Officer Poindexter's explanatory testimony, the State would have been unfairly prejudiced by the Defendant's insinuation that the police investigation was not thorough or that the victim's identification of the vehicle used in the robbery was unduly problematic. The trial court carefully observed the proper procedure and weighed the prejudicial effect and probative value of the proffered testimony. The Defendant has failed to show an abuse of discretion by the trial court on this evidentiary issue.

## 2. Denial of Motion for Judgment of Acquittal / Sufficiency of Evidence

The Defendant next contends that the trial court erred when it denied his motion for judgment of acquittal. The trial court denied the Defendant's motion at the close of the State's proof. The Defendant elected to present evidence after the trial court denied the motion, thus waiving appellate review of the motion for judgment of acquittal. See State v. Conrad, No. M2008-01342-CCA-R3-CD, 2009 WL 3103776, at *6 (Tenn. Crim. App. Sept. 29, 2009); State v. Clardy, No. M2007-02729-CCA-R3-CD, 2009 WL 230245, at *11 (Tenn. Crim. App. Feb. 2, 2009). We, however, will review whether sufficient evidence was presented to support the Defendant's conviction for aggravated robbery. In doing so, we will consider both the evidence presented by the State as well as the evidence presented by the Defendant. See Clardy, 2009 WL 230245, at *11. Our standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating that the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellate court does not weigh the evidence anew; rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839

-12-

S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. at 75 (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

In the present case, the Defendant was convicted of aggravated robbery. Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (2006). A robbery becomes aggravated, as relevant here, when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a) (2006).

At trial, the victim testified that the Defendant approached him at the Circle K gas station with a drawn handgun. When the victim ran, the Defendant chased him. The victim testified that he feared the Defendant would shoot him, and so he stopped running and turned around to face the Defendant. According to the victim, the Defendant told him, "Drop it off, bitch," and that in response, he handed the Defendant his wallet, which contained six hundred dollars and three credit cards. The Defendant then took the wallet and escaped in a red Dodge Dakota pickup truck. The victim provided police with a description of his assailant and possible license plate numbers to the truck, one of which nearly matched a vehicle that the Defendant admitted being in the day after the robbery. The victim then positively and unequivocally identified the Defendant as the robber both in a photographic lineup and at trial. In his defense, the Defendant provided testimony that his physical appearance differed from that described by the victim. Specifically, the testimony indicated that at the time of the robbery, the Defendant had facial hair, wore a different hairstyle than described by the victim, and had tattoos on the back of each hand, which the victim did not notice. The Defendant also had two alibi witnesses, his aunts, who testified that he was asleep in bed on the night of the robbery.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). Thus, the credibility of an eyewitness identifying the accused as the perpetrator of the crime for which he stands trial is a matter entrusted to the trier of fact and not this Court. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). Likewise,

-13-

the credibility of alibi testimony is a question of fact to be resolved by the jury. Cole v. State, 215 S.W.2d 824, 825 (Tenn. 1948). It is well settled that "the testimony of a victim, by itself, is sufficient to support a conviction." Strickland, 885 S.W.2d at 87 (citing State v. Williams, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)). In this case, the jury, as the trier of fact concerning the credibility of the witnesses, accredited the testimony of the victim over the testimony of the alibi witnesses. It is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted). Consequently, we hold that the evidence clearly was sufficient to support the Defendant's conviction for aggravated robbery and conclude that the trial court did not err in denying the Defendant's motion for judgment of acquittal.

### 3. Sentencing

Lastly, the Defendant argues that the trial court erred by applying as a sentencing enhancement factor that the Defendant was a leader in the commission of an offense that involved two or more criminal actors. On appeal, the applicable standard of review of a challenged sentence is *de novo* on the record with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The party challenging the sentence has the burden of demonstrating that it is improper. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2008).

Following the 2005 amendments to the Sentencing Act, "a trial court 'shall consider, but is not bound by' an 'advisory sentencing guideline' that suggests an adjustment to the defendant's sentence upon the presence or absence of mitigating and enhancement factors." Carter, 254 S.W.3d at 344 (quoting Tenn. Code Ann. § 40-35-210(c)). These mitigating and enhancement factors are set out in sections 40-35-113 and -114, and the trial court shall consider "[e]vidence and information offered by the parties" in applying these factors. Tenn. Code Ann. § 40-35-210(b)(5) (2006). While a trial court has considerable discretion when imposing a sentence, it is required to place on the record which "enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, in order to ensure fair and consistent sentencing." Tenn. Code Ann. § 40-35-210(e). A defendant may challenge an enhanced sentence on direct appeal. Tenn. Code Ann. § 40-35-401(b)(2) (2006). Consequently, if the trial court applies inappropriate enhancement or mitigating factors, or fails to follow the guidelines of the Sentencing Act, the presumption of correctness fails and our review becomes *de novo*. Carter, 254 S.W.3d at 345 (citing State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992); State v. Pierce, 138 S.W.3d 820, 827 (Tenn. 2004)).

The trial court sentenced the Defendant as a Range II multiple offender to eighteen years and six months. The court declined to find mitigating factors, but found two enhancement factors. First, the trial court enhanced the Defendant's sentence based on his extensive previous history of criminal behavior, which was over and above that necessary to establish his range, including five felony convictions, numerous misdemeanor offenses, and a long history of illegal drug use.[4] See Tenn. Code Ann. § 40-35-114(1). On appeal, the Defendant does not contest the trial court's application of this enhancement factor to his sentence.

Second, the trial court found that the Defendant was a leader in the commission of an offense involving two or more criminal actors. See Tenn. Code Ann. § 40-35-114(2). In applying this factor, the trial court stated from the bench, as follows:

> I also find too that he was the leader in the commission [of an] offense involving two or more criminal actors. I'm not saying he was the leader. I'm saying he was a leader, in that, he's the one with the weapon that jumped out of the car. It's kind of hard to say that somebody in the car would order him to do it. There's no proof of that in the record and he's the one with the gun, but he is the one who actually performed the robbery and took the items.

The Defendant asserts that the application of this second enhancement factor was in error because the evidence did not reveal the identity of the driver or what role the driver may have played in the robbery. Consequently, the Defendant argues that any finding as to the driver's involvement in the robbery is merely speculation.

---

[4]The Defendant's history of felonies included convictions for: (1) burglary, a Class D felony, on September 18, 1997; (2) criminal attempt, a Class E felony, on November 4, 1997; (3) theft over $500, a Class E felony, on September 20, 1999; (4) theft over $10,000, a Class C felony, on November 15, 2000; and (5) theft over $1,000, a Class D felony, on June 1, 2005. The Defendant's history of misdemeanors included convictions for, *inter alia*: (1) failure to appear, desecration of a venerated object, and driving on a revoked license, June 5, 1996; (2) driving on a revoked license, January 25, 1997; (3) driving on a revoked license, December 26, 2002; (4) theft of a vehicle, July 11, 2004; (5) criminal trespass, March 22, 2007; (6) criminal trespass, May 1, 2007; (7) criminal trespass, May 2, 2007; (8) criminal trespass, August 7, 2007; (9) criminal trespass, August 17, 2007; (10) simple possession of cocaine, September 24, 2007; (11) vandalism, February 25, 2008; and (12) assault, November 6, 2008. The Defendant's presentence report indicated that he had used illegal drugs on a daily basis, including marijuana, powder cocaine, and crack cocaine, since the age of thirteen. The Defendant stated that he was physically dependent on crack cocaine and was not ready for a drug abuse program because he had not decided to quit using illegal drugs.

-15-

We must agree with the Defendant on this issue. The identity of the driver was not in evidence; neither was the driver's degree of knowledge of the actions of the Defendant. The record is also silent as to whether the driver was an active participant or whether the driver was under duress placed upon him or her by the Defendant. While the trial court's assumptions in applying this enhancement factor are logical, we simply cannot find sufficient evidence in the record to support those assumptions. Therefore, we conclude that the trial court erred in applying this enhancing factor.

Having found that the trial court misapplied an enhancement factor, we must review the Defendant's sentence *de novo*. Carter, 254 S.W.3d at 345. In performing this *de novo* review, we are mindful that under the amended statute, there is no longer a presumptive sentence. Id. at 343. "Rather, the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. (citing Tenn. Code Ann. § 40-35-210(d)).[5]

Upon our *de novo* review of the evidence and the purposes and principles of the Sentencing Act, we find that a sentence of eighteen years and six months was appropriate. The Defendant has a substantial prior criminal history over and above that necessary to establish his sentencing range. Additionally, the record indicates that the Defendant has used illegal drugs since about age thirteen. Moreover, the Defendant reports that his body still needs crack cocaine, but that he is not ready for a drug abuse program because he has not decided to quit his drug habit. This makes any chance of rehabilitation very unlikely.

Aggravated robbery is a Class B felony, and the sentence range for a Class B felony, Range II offender is twelve to twenty years. Tenn. Code Ann. §§ 39-13-402(b); 40-35-112(b)(2) (2006). Given the Defendant's prior criminal history, admitted history of illegal drug use, and poor chance of rehabilitation, the trial court was well within the applicable sentencing purposes and principles to sentence the Defendant to eighteen years and six months. Consequently, we find no error in the sentence ordered by the trial court.

---

[5]The purposes and principles of the Sentencing Act are set forth at Tennessee Code Annotated sections 40-35-102 and -103.

## IV. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court.

_____
JEFFREY S. BIVINS, JUDGE